[L. A. No. 22756.  In Bank.  July 23, 1954.]

CYRIL L. ABLETT et al., Respondents, v. ERNEST L. CLAUSON et al., Appellants.

[L. A. No. 22757.  In Bank.  July 23, 1954.]

ERNEST L. CLAUSON et al., Appellants, v. C. L. ABLETT et al., Respondents.

Hiram T. Kellogg for Appellants.

Freston & Files as Amici Curiae on behalf of Appellants.

Fizzolio & Fizzolio, Carl B. Sturzenacker and Walter Monarch for Respondents.

EDMONDS, J.—Ernest L. Clauson and his wife, who are the owners and lessors of certain real property, have appealed from a judgment which declares their rights under a lease. The appeal is also from a judgment in an action for unlawful detainer brought by them against Cyril and Kathleen Ablett, who claim as assignees of the interests of the original lessees. The principal question concerns the Abletts' right, if any, to a renewal of the lease.

Much of the evidence is sharply conflicting, but the following facts appear without substantial dispute:

The Clausons by a written agreement leased a building used for a restaurant to a group of persons whom the parties have designated the "Rite Spot People." The lease was for a term of five years, ending on August 31, 1951. It was agreed that the lessees "shall have the first right and a prior option to secure a lease upon said premises before the same are offered to any other person, firm or corporation for lease or rental and that said option shall contemplate a lease for a period of five (5) years upon terms to be then agreed upon."

Shortly after the Rite Spot lessees took possession, the building and an adjacent parking lot were modified for use as a drive-in restaurant. Thereafter the premises were used in that way. The lessees then formed a corporation and transferred to it the assets of the business. The record does not show either a transfer of the lease to the corporation or the Clausons' consent to make such a transfer.

In the latter part of 1948, the Abletts began negotiating with the Rite Spot lessees to purchase the business. The negotiations resulted in a sale of the business to the Abletts, and the execution by the lessees of an instrument by which

they "assigned" all their "right, title and interest" in the lease to the Abletts. The Abletts took possession of the premises and continued the business, as found by the trial court, with the knowledge and acquiescence of the Clausons.

Some time later, a dispute arose between the Clausons and the Abletts concerning the performance of certain grading operations on the parking area adjacent to the restaurant building. There was also another controversy relating to the Abletts' refusal to permit Clauson to remodel the restaurant building. In January, 1951, Mr. Clauson informed the Abletts that he would not renew the lease upon its expiration, and since that time he has continually refused to do so.

The Abletts then commenced an action for "declaratory relief, trespass, injunction." Named as defendants were the Clausons, each of the original lessees and the corporation formed by them, and several other persons. The principal relief sought was a declaration that they have a valid option to renew their lease "at the same terms" and for an additional five years, and that the Clausons "by their acts and conduct are estopped from denying the existence of such option." As an alternative the Abletts asked for judgment that the defendants are liable to them for fraud and misrepresentation. The Clausons then sued the Abletts for unlawful detainer. The actions were consolidated for trial and appeal.

In the action commenced by the Abletts, judgment was rendered in favor of all of the defendants, except the Clausons, and against the Abletts. Their rights against the Clausons were declared to be as follows: The Abletts are assignees of all of the rights of the original lessees in the lease with the consent of the Clausons. As assignees of the lease, the Abletts "are entitled to a renewal thereof for an additional five-year term . . . pursuant to the terms and provisions of Clause 17 of the lease."

The judgment in the unlawful detainer action was in favor of the Abletts. The court held that they are entitled to a renewal of the lease for an additional five-year term, "pursuant to the terms of the lease."

The Clausons challenge the portions of the declaratory judgment relating to the purported assignment of the lease, the right of the Abletts to obtain a renewal of it, and the extent and nature of the lessees' rights in the leasehold under a renewal. They also contend that the provision concerning an option does not prevent the lessors from taking possession of the premises upon the termination of the original lease.

The decisive question here presented concerns the provision of the lease which the Abletts contend granted to the original lessees an option for an additional term of five years. [1] According to the Clausons, the evidence indisputably shows that the Abletts obtained only a sublease of the premises. If that is the legal effect of the transaction between the parties, the Abletts have no right to any option given by the lease. Only if they are assignees may they enforce an obligation of the lessors to a further term.

But if it be assumed that the Abletts are assignees of the lease, the provision here in controversy does not meet the requirements of an option which may be enforced. It does not purport to grant an absolute right to an additional term of five years or any other period. As the Clausons correctly state, it gives the lessees only ''the first right and a prior option to secure a lease upon said premises before the same are offered to any other person, firm or corporation for lease or rental. . . .'' It does not specify the terms for such a lease but provides that it shall be for five years ''upon terms to be then agreed upon.''

The Abletts contend that the provision, ''first right and prior option,'' does not in any way qualify the right of renewal. They rely upon the statement in *Butt* v. *Maier & Zobelein Brewery*, 6 Cal.App. 581 [92 P. 652], that '' [t]he word 'prior' . . . does not qualify the right of renewal. The right given the lessee to lease for a further term of five years must necessarily be *prior* to the right of the other parties to lease the property.'' (P. 585.) In that case, the lease included an option to the lessor to terminate the lease at the end of the original term by purchasing the improvements made by the lessee. In another clause of the lease, the lessee was given a ''prior right'' to lease the premises for an additional term, subject to the lessor's right to claim the improvements at the end of the term without payment of their reasonable value. It was the latter clause to which the court referred.

In *Falkenstein* v. *Popper*, 81 Cal.App.2d 131 [183 P.2d 707], the lease gave the lessee ''the first opportunity'' to purchase the property. The court reviewed extensively the decisions which discuss the meaning of such terms as ''first privilege,'' and ''first right,'' and concluded that the weight of authority holds that such provisions do not give the lessee an absolute right to a renewal, but one conditioned upon the lessor's leasing the property, in which case the lessee may have

first refusal. Quoting from a leading New York case, the court said: " 'In construing the clause in question, the court is required to give some meaning to all the words used. To construe the clause in accordance with the contention of the respondent (lessee) would require that the word "first" be eliminated. With that word eliminated, the privilege to buy would be absolute and enforceable. (Citations.) There-fore, it must have been used to prevent the agreement from constituting an absolute option to sell. The phrase "first privilege to buy" and the words "privilege to buy" have an entirely different meaning; one is conditional and the other absolute.' " (Pp. 135-136.) The Butt case was distinguished, the court pointing out that the options given the lessor and the lessee in that case were conflicting, both apparently giving an absolute right at the termination of the original lease. Use of the word "prior" might have been explained as in-dicating the supremacy of the lessee's option over that of the lessor.

In the present case, the option is a "first right and prior option" to lease the premises *before the same are offered to any other person, firm or corporation for lease or rental.* The clear meaning of the provision is to give the lessee a first refusal or right to lease, conditioned upon the lessor's leasing of the property again. This construction is in accord-ance with the Falkenstein case, and the clear weight of authority. (See anno. 6 A.L.R.2d 820.)

The Clausons further contend that the option provision does not give even a conditional right to a renewal, but is too uncertain to be enforced. Their position is that the judg-ment declares that a renewal should be "pursuant to the terms and provisions of Clause 17 of the lease," and that clause specifies a new lease "upon terms to be then agreed upon." In effect, they say, this provision is an agreement to contract in the future, for a breach of which neither law nor equity provides a remedy. (*Autry* v. *Republic Produc-tions, Inc.,* 30 Cal.2d 144, 151 [180 P.2d 888].) The Abletts rely upon *Chaney* v. *Schneider,* 92 Cal.App.2d 88 [206 P.2d 669], which affirmed a judgment declaring enforceable an option provision very similar to the one in the present case.

■ The general rule regarding contracts to agree in the future is stated to be as follows: "Although a promise may be sufficiently definite when it contains an option given to the promisor or promisee, yet if an essential element is re-served for the future agreement of both parties, the promise

can give rise to no legal obligation until such future agreement. Since either party by the terms of the promise may refuse to agree to anything to which the other party will agree, it is impossible for the law to affix any obligation to such a promise.'' (1 Williston, Contracts (Rev.ed. 1936) 131, § 45.) The rule is well established in this state (*Autry* v. *Republic Productions, Inc., supra,* 30 Cal.2d 151; *Vangel* v. *Vangel,* 116 Cal.App.2d 615, 631 [254 P.2d 919]; *Howard* v. *Burrow,* 77 Cal.App. 4, 8 [245 P. 808]), and, in conformity with the weight of authority in other states (see anno. 172 A.L.R. 421, et seq.), it has been held that an option agreement which leaves an essential term to future agreement is not enforceable. (*Morrison* v. *Rossignol,* 5 Cal. 64, 65-66; *cf. Los Angeles Soda Works* v. *Aquazone Co.,* 103 Cal.App. 105, 106 [284 P. 253]; *Autry* v. *Republic Productions, Inc., supra,* p. 155.)

Where the only term of a new lease requiring the agreement of the parties is the fixing of rent, some courts have adopted an exception to the general rule. One example is where the rent is to be fixed by arbitration. It has been held that submission to arbitration is ancillary to the main purposes of the option provision, and upon failure of the arbitrators to agree, a court of equity may fix the amount of rent. (See cases cited in *Glenn* v. *Bacon,* 86 Cal.App. 58, 71-72 [260 P. 559].) In another group of cases, the courts, ''recognizing the practical business utility of such clauses in a lease,'' treat option agreements which leave the amount of rent to be fixed by subsequent agreement as sufficiently definite ''by interpreting them as meaning a reasonable rental under the circumstances in case the parties cannot agree.'' (Williston, op. cit. *supra,* pp. 132-133; see annos, 68 A.L.R. 157; 166 A.L.R. 1237.)

In *Streicher* v. *Heimburge,* 205 Cal. 675 [272 P. 290], the renewal lease was to be for an additional term of five years ''upon the same covenants and conditions'' as the original lease, except that the parties were to agree upon a new rental. If they were unable to agree within 30 days from the acceptance of the option, the controversy as to the amount of rent was to be submitted to arbitration. Attempts to arbitrate the matter failed, and the lessor sued for unlawful detainer. The trial court concluded that the successful arbitration of rent was a condition precedent to the creation of a new lease, and the condition having failed, no right to renew accrued to the lessee. On appeal, this court reversed the judgment,

holding that, construed most strongly in favor of the lessee, the option provision insofar as it related to the fixing of rent was a covenant, rather than a condition. It was concluded that "[w]hether the rental . . . shall be the amount provided for in the original lease, the amount fixed by the appraisers appointed *ex parte* or whether in the absence of an agreement of the parties a court of equity shall fix it, are questions not germane to this appeal." (P. 685.)

In *Chaney* v. *Schneider, supra,* the option provision in controversy provided that "Lessor agrees to give Lessee first refusal for an additional term of lease, at rentals and terms to be mutually agreed upon at that time. . . ." The trial court adjudged that the option entitled the lessee to an additional term of five years, upon the same terms and conditions as the original lease, but at an increased rental. Upon appeal, the judgment was affirmed, the court ruling that the renewal of the lease was the "essence of the contract" with the other terms and conditions merely incidental details.

Although there is an intimation in other decisions that a court of equity is empowered to fix a reasonable rental under an option provision reserving that matter to the future agreement of the parties (*cf. Penilla* v. *Gerstenkorn,* 86 Cal.App. 668, 670-671 [261 P. 488]; *Kaliterna* v. *Wright,* 94 Cal.App. 2d 926, 939-940 [212 P.2d 32], the extensions of the rule suggested by the Chaney decision seem seriously questionable. The basis for upholding option provisions which leave the amount of rent to future agreement is that the implied agreement of a reasonable rent if the parties are unable to agree, provides a sufficient standard for enforcing the option without requiring the court to write a new contract for them. But certainly the Streicher case is not authority for the proposition, relied upon in the Chaney decision, that the court may fix all of the provisions of a new lease without ascertainable standards in the option agreement. (*Cf. Autry* v. *Republic Productions, Inc., supra,* 30 Cal.2d 154-155.)

In the present case, the original lease is nine typewritten pages in length and contains 17 separate numbered clauses in addition to the paragraph which includes the provision for securing a new lease. The only term fixed by the option provision as contemplated by a new lease is its duration. All of the other provisions are left to future agreement. In these circumstances, the terms of the option are too uncertain to make it enforceable as a contract right.

This conclusion does not mean, however, that the rights

claimed by the Abletts in the leasehold may not be enforced under a different theory. The Abletts assert that the Clausons are estopped to deny that the lease includes an absolute option to renew upon the same terms and conditions as provided by the original lease. Although the pleadings were framed upon that theory and facts were found from which an estoppel might be inferred, there was no finding that the Clausons are estopped to deny the Abletts' right to an option, and the record does not compel that conclusion. From those facts, the trial court reasonably might have determined the issue of estoppel contrary to the claims of the Abletts in that regard.

The judgments are reversed.

Shenk, Acting C. J., Carter, J., Traynor, J., Schauer, J., Spence, J., and Bray, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.