[Civ. No. 5936.   Fourth Dist.   Mar. 5, 1959.]

MAXIMILIAN ROVEN, Appellant, v. WILLIS L. MILLER
et al., Respondents.

John W. Preston, John W. Preston, Jr., and Adelman & Schwartz for Appellant.

Powell & Banyard and Robert A. Banyard for Respondents.

MUSSELL, J.—This is an action for specific performance of a contract for the sale by defendants to plaintiff of approximately 99.66 acres of land in Orange County. In the first count of the complaint plaintiff sought specific performance of an alleged written contract and in the third count sought specific performance of an alleged oral contract, claiming that the defendants were estopped to deny said oral agreement. Counts two and four of the complaint, in which plaintiff sought damages for breach of contract, were dismissed and the issue of plaintiff's right to specific performance was tried by the court without a jury. Judgment was rendered denying specific performance of the contract and plaintiff appeals from the judgment and also seeks to appeal from an order denying motion for a new trial. Since an order denying motion for a new trial in a civil case is not appealable, plaintiff's purported appeal from that order must be dismissed and only the appeal from the judgment need be considered. (*Pipoly* v. *Benson*, 20 Cal.2d 366, 368 [125 P.2d 482, 147 A.L.R. 515].)

On August 14, 1954, plaintiff and defendants entered into a contract in writing, entitled "Purchase Option Contract," which is quoted in footnote 1.

---

[1] "'WILLIS L. MILLER and DOROTHY M. MILLER, as Sellers, do hereby agree to sell:

"*Approximately 99.66 acres out of a 124.09 acre (more or less)*

During the 60-day period in which plaintiff was to ''determine the contingencies'' defendants requested in writing that he report on his progress. Roven reported that the prelimi-

parcel of real property, generally located as immediately adjoining the Joe Soares property on the east and north lines between Garden Grove Boulevard and Westminster Boulevard, excepting therefrom all oil and mineral rights below 500 feet of the surface of the subject real property (exact legal description to be supplied later), with the subject real property to be used for the construction and maintenance of dwellings only. A rough sketch of the property to be retained by Sellers for commercial development is attached hereto marked ''Sketch A'' and made a part hereof. The property to be retained by Sellers fronts on Garden Grove Boulevard and hereafter to be referred to as Parcels No. 1, No. 2 and No. 3, the legal description of each parcel being as follows: (Legal description.)

''This Purchase Option Contract made to MAXIMILIAN ROVEN only, hereinafter called Buyer, upon the following terms and conditions:

''That Buyer shall have sixty (60) days from the date he signs this Agreement to determine whether or not the subject real property will be suitable for subdivision. That the following contingencies, and no others, shall be determined by Buyer during said sixty (60) day period.

''a. Approval of preliminary title report within ten (10) days after receipt thereof and approval of conditions of right of way as of record and as of use.

''b. Reasonable availability of sewage disposal facilities.

''c. A drainage system for the subject real property acceptable to the Board of Supervisors of Orange County.

''d. Satisfactory zoning for housing.

''e. F. H. A. or V. A. approval.

''f. Suitability of real property for subdivision purposes from an engineering standpoint as determined by engineering study and report.

''That in determining the scheme of proposed development the Buyer shall give the Sellers first preference in the right to supply domestic water for the proposed subdivision development. That if Sellers are unable or unwilling to supply said water in the manner desired and acceptable by Buyer, Buyer may secure water from some other source on the same terms and conditions that said preferential right was offered to Sellers.

''That Buyer shall use diligence in resolving the above contingencies and will report in writing as to his progress in the determination thereof upon written request of Sellers.

''This Contract shall be held by Jas. H. Kindel, Jr., 705 North Main Street, Santa Ana, California, and all writings and information concerning this contract shall be directed to him at the above address.

''That Buyer as evidence of good faith shall deposit with Jas: H. Kindel, Jr., upon the signing of this agreement, the sum of $10,000.00.

''That if upon the expiration of the sixty (60) day period Buyer has been unable to resolve any of the contingencies hereinabove specified, through no fault of his own and solely by reason of County, State or Federal governmental agencies, Sellers agree to allow Buyer a reasonable additional period of time; however, time is of the essence in respect to said contingencies.

''That at the end of said sixty (60) day period or a reasonable extension thereof, as hereinabove provided, Buyer must advise Sellers in writing whether or not he will, or will not, purchase the subject real property. No notice received from Buyer will be deemed a rejection by Buyer of Sellers' offer, and this agreement will be terminated as though Buyer declined in writing to purchase said real property. In the event

nary title report was acceptable; that some preliminary field work had been done; that a preliminary "V. A." approval had been received; and that he had requested the Boyle Engi-

Buyer shall refuse to complete the purchase, Jas. H. Kindel, Jr. upon receipt of all engineering data and other studies that Buyer has caused to be made in relationship to the subject real property, shall return the sum of $10,000.00 to Buyer after deducting any expenses incurred by reason of and pursuant to this agreement, which shall be limited to the following: Costs of preliminary title report, long distance phone calls, and mailing charges.

"That if Buyer elects to proceed with the purchase of said real property, Sellers shall have ten (10) months from the receipt of notice to purchase to determine whether or not they will accept said real property which may be offered Sellers in lieu of a part of or all of the cash or other property to be paid for the purchase price of the subject real property.

"That at any time after Buyer gives Sellers notice of his intention to purchase, Sellers may, and must within a period of 307 days from the date of delivery of said notice, enter into a sixty (60) day escrow agreement to sell the subject real property to Buyer, upon the following terms and conditions:

"1. The escrow and all related matters of sale, including pay-off of the Deed of Trust, shall be at the First National Bank of Garden Grove.

"2. That Sellers will provide a standard Joint Protection Title and Insurance Policy from the Orange County Title Company, Santa Ana, California.

"3. That the purchase price of the real property is to be calculated on the value of $3,500.00 per acre, acreage subject to survey.

"4. All taxes and special assessments to be pro-rated to close of escrow.

"5. Buyer to stand all expenses of flood control and drainage program.

"6. Buyer's downpayment, including the $10,000.00 theretofore deposited with Jas. H. Kindel, Jr., to be a total of $180,000.00 or equivalent property, valuation of which is mutually agreed upon in writing by the parties hereto to be not less than $180,000.00. The balance due on the purchase price shall bear interest at the rate of 6% per annum and said balance shall be secured by a First Deed of Trust which will contain the following provision:

" 'This Deed of Trust will be subordinate to a First Deed of Trust to secure a construction loan which will be placed upon the property by the Trustor, or his successors and assigns, given to a recognized Savings and Loan Association or bank for the purpose of securing a loan to be used for the construction of residences and improvements on said property. Beneficiary will issue a partial reconveyance for any specific lot number covered by this Deed of Trust upon the payment to the beneficiary of a sum equal in proportion to the number of lots secured by the Deed of Trust to the original amount of the note secured hereby plus 20% for each lot reconveyed. When the balance of the note secured by this Deed of Trust has been paid in full, beneficiary will issue a full reconveyance for the property still covered by the lien of this Deed of Trust.' "

"7. The balance of the purchase price due secured by said Deed of Trust shall be payable within eighteen (18) months from the date of start of escrow.

"8. That out of the last $11,000.00 to be paid by Buyer to Sellers

neering Company to furnish defendants certain progress reports. From the time the agreement was signed by defendants and until November 4, 1954, they had not been supplied with information regarding their supplying domestic water to plaintiff's proposed subdivision and at no time were they offered first preference in the right to supply water. At Roven's request the 60-day option period was extended to November 5, 1954. On November 4, 1954, Roven informed defendants in writing that he had determined that the subject property was suitable for subdivision and gave defendants notice that he would purchase the property in accordance with the purchase option agreement.

On December 16, 1954, defendants filed an application with the Orange County Planning Commission to have their Garden Grove Boulevard frontage rezoned for commercial use and the area applied for was the same as shown on the sketch attached to the agreement involved.

On December 10, 1954, the Boyle Engineering Company reserved tract numbers, including the Millers' property, at the county surveyor's office and in the latter part of 1954 plaintiff instructed Engineer Fickes to contact various water companies to furnish water to the entire development. In January, 1955, the planning commission advised the defendants that the tentative map filed by Boyle Engineering Company was for the entire area and that the area excluded for commercial use was not the same as defendants had described in their application for commercial zoning and, that in order to forestall any action on the Boyle map, they should hire an engineer to prepare another map for filing on their

---

pursuant to the promissory note secured by the deed of trust securing the balance due, Sellers agree to pay $11,000.00 to Don Christenson and Harry Barancik, 212 Beverly Drive, Beverly Hills, California.

"SELLERS' REMAINING PROPERTY

"That with respect to the remaining 24.46 acres (more or less) retained by Sellers, the Sellers agree to do the following things in connection with and as a part of Buyer's proposed subdivision development:

"a. Sellers will pay their proportionate share of all improvements required in the overall scheme of development which is constructed on the property to be retained by Sellers.

"b. That in case Sellers do not use all of Parcel No. 2 for commercial development, Buyers are to have first refusal of same.

"This Agreement made and to be performed in the City of Santa Ana, California.

"This offer good until noon, August 16, 1954.

"WITNESS our signatures this 14 day of August, 1954.

(Signatures)"

behalf. This conflict with respect to maps resulted in numerous meetings and discussions between the parties.

Mr. Fickes testified that one of his problems from the beginning of the project was to determine what property was being reserved for commercial area and at no time did Fickes or Roven have any discussion regarding the site for the church which was referred to in the purchase agreement.

On April 13, 1955, plaintiff filed a tentative map with the planning commission and this map contained no church site, no over-all scheme of development, reduced the commercial area of the Miller property and was filed without the consent of the defendants.

At various meetings and in correspondence with Roven the Millers and their attorney advised Roven that he was in default and that the option agreement had terminated. On September 7, 1955, defendants, with their attorney and plaintiff's attorney, met at an escrow office and attempted to come to some agreement and to open an escrow "if all the conflicts had been resolved." The parties were unable to agree on the terms of the sale and Miller then stated that he would prefer that plaintiff be personally present. On the following day, September 8, 1955, the parties and their attorneys met at the same escrow office and a further attempt was made to agree upon the terms and conditions of the sale. No agreement was reached and thereafter plaintiff and his attorney prepared escrow instructions and submitted them to defendants, who refused to sign them. On September 19, at another meeting, Miller stated to Roven that it was apparent that they could not get together. On November 4, 1954, Roven notified defendants by letter that he had determined that the property involved was suitable for subdivision and he would purchase said property in accordance with the terms of the option agreement. On November 14, 1955, Roven advised defendants by letter that he would appear at a bank in Garden Grove on November 28, 1955, "with the full cash portion of the purchase price and a note for the balance of the purchase price to be secured by first trust deed on the property, without subordination provisions or other contingencies, ready, able and willing to deposit same in escrow and fully carry out all the terms and provisions of the purchase option agreement to be performed on my part. Demand is hereby made on you that you be present at said time and place ready to deposit in escrow your deed to said property and otherwise fully carry out and perform the terms and provisions of the purchase option con-

tract on your part.'' The defendants did not appear at said bank on November 28, 1955, and on December 12, 1955, Roven filed the instant action for specific performance.

The trial court found, *inter alia,* that

''It is true: That defendants granted an extension of the option period set forth in said agreement to November 5, 1954; that on November 4, 1954, plaintiff notified defendants, in writing, that he was exercising the option; that at the time of said notice plaintiff and defendants had not reached an agreement concerning defendants' supplying domestic water for the proposed subdivision development; that at the time of said notice, plaintiff had not given defendants first or any preference in the right to supply domestic water for the proposed subdivision development; that at the time of said notice, plaintiff had not resolved all the contingencies contained in the agreement and had not used diligence to resolve said contingencies; that at the time of said notice plaintiff had been requested in writing by defendants to report as to his progress in determining said contingencies and that plaintiff, at the time of said notice, had not reported his progress to defendants as requested by defendants.

''It is true: That the said agreement entered into between plaintiff and defendants on August 16, 1954 is incomplete, indefinite and uncertain.

''That said provision for subordination does not state the amount of the construction loan which will be placed on said property, nor any of its terms, nor when said construction loan will become due, nor the rate of interest that it will bear nor the terms of the first Deed of Trust nor the conditions of the first Deed of Trust; that the provisions of said subordination clause hereinabove referred to are incomplete, vague, indefinite and uncertain; that in order for the parties to complete the transaction, it was necessary for them to agree in the future upon the terms and conditions of said construction loan and of the first Deed of Trust to secure it; that no agreement was ever had between the parties concerning the terms and conditions of said subordination agreement nor the terms and conditions of said Deed of Trust which was to secure said construction loan.

In *Gould* v. *Callan,* 127 Cal.App.2d 1 [273 P.2d 93], it was held that the failure of a subordination clause to state the amount of interest and the terms and conditions of payment of an obligation to be secured by a first deed of trust made the contract uncertain and indefinite and justified the

court in denying specific performance; that a contract will not be enforced unless it is complete and certain; that a contract for the sale of realty will not be specifically enforced unless it not only contains all the material terms, but also expresses each in a reasonably definite manner; that this general principle has been applied in denying specific performance of contracts which were incomplete, indefinite and uncertain with respect to the terms of payment of deferred balances or the terms of the encumbrances representing such deferred balances and that uncertainty as to the terms and conditions of deferred payments is fatal to a claim for specific performance.

In *Bruggeman* v. *Sokol*, 122 Cal.App.2d 876 [265 P.2d 575], the escrow instructions were indefinite and uncertain as to the time, place and conditions of the payment of the purchase price and the terms and conditions of the interim finance were not set forth and were to be determined at some future time. It was there held that the trial court properly refused to decree specific performance of a contract for the sale of the real property involved.

In the instant case the subordination clause contained in the purchase option contract does not state the amount of the construction loan which would be placed on the property, nor any of its terms, nor when said construction loan would become due, nor the rate of interest that it would bear, nor the terms or conditions of the first deed of trust to secure said construction loan. These provisions are material and essential to a contract providing for a deed of trust as security for an obligation and their absence justified the trial court in denying specific performance of the contract.

The purchase option agreement provided ''That with respect to the remaining 24.46 acres (more or less) retained by the Sellers, the Sellers agree to do the following things in connection with and as a part of Buyer's proposed subdivision development: a. Sellers will pay their proportionate share of all improvements required in the overall scheme of development which is constructed on the property to be retained by Sellers''; and b. That in case Sellers do not use all of Parcel No. 2 for commercial development, Buyers are to have first refusal of same.'' These provisions require an agreement in the future as to what improvements would be required in the development of the property retained by the sellers and as to their cost and its apportionment.

In *Ablett* v. *Clauson*, 43 Cal.2d 280, 284 [272 P.2d

753], the court stated that the general rule regarding contracts to agree in the future is stated to be as follows:

"Although a promise may be sufficiently definite when it contains an option given to the promisor or promisee, yet if an essential element is reserved for the future agreement of both parties, the promise can give rise to no legal obligation until such future agreement. Since either party by the terms of the promise may refuse to agree to anything to which the other party will agree, it is impossible for the law to affix any obligation to such a promise."

And that the rule is well established in this state and it has been held that an option agreement which leaves an essential term to future agreement is not enforceable.

■ Appellant argues that the trial court erred in finding and decreeing that the purchase option contract had been terminated on or before November 14, 1955, the date of plaintiff's letter to defendants waiving the subordination provisions of the contract is not supported by the evidence. However, the contract provided that "At any time after Buyer gives Sellers notice of his intention to purchase, Sellers may and must within the period of 307 days from the date of delivery of said notice enter into a 60-day escrow agreement to sell the subject property to the Buyer." The notice was dated November 4, 1955, and the option by its terms expired on September 8, 1955.

In *Klein* v. *Markarian*, 175 Cal. 37, 41 [165 P. 3], the court said:

"The appellant concedes, virtually, that the writing is, on its face, so uncertain as to preclude specific enforcement. He claims, however, that all uncertainty was removed by his act of tendering four notes, together with a mortgage to secure them. The defendant having then failed to specify any objections to the terms of the instruments tendered, he was, it is argued, precluded from objecting thereafter. Section 2076 of the Code of Civil Procedure, providing that objections not made by a person to whom a tender is made, are deemed waived, is cited in support of this claim. This section is qualified by section 1501 of the Civil Code, which provides, in effect, that the failure to object does not waive a defect which could not, if specified, have been obviated by the person making the offer. (*Allen* v. *Chatfield*, 172 Cal. 60, 69 [156 P. 47].) No matter what the defendant might have said in response to the offer, the plaintiff could not, of course, have remedied the defects in the written option. The writing was

so indefinite that the plaintiff could not, within its terms, lay the foundation for a decree of specific performance. To hold the defendant bound by a tender outside of the provisions of the option would be to make a new contract for him. His mere silence, when the unauthorized offer was made to him, did not constitute an assent to such new contract.''

Appellant contends that the trial court erred in not finding for him on his plea of estoppel contained in the third cause of action in the complaint. However, the question of whether estoppel existed was one of fact for the trial court and where, as here, the evidence is sufficient to support an inference by the trial court that no estoppel existed, its finding to that effect will not be disturbed on appeal. (*Hagenbuch* v. *Kosky,* 142 Cal.App.2d 296, 301 [298 P.2d 875].)

There is sufficient substantial evidence in the record before us to support the trial court's refusal to decree specific performance of the contract involved.

Judgment affirmed. Appeal from order dismissed.

Griffin, P. J., and Shepard, J., concurred.

A petition for a rehearing was denied March 30, 1959, and appellant's petition for a hearing by the Supreme Court was denied April 29, 1959.