[No. A015276. First Dist., Div. Two. Nov. 21, 1984.]

ETCO CORPORATION, Plaintiff and Appellant, v.
ELLEN B. HAUER, Defendant and Respondent.

**COUNSEL**

Varnum Paul and Vaughn, Paul & Lyons for Plaintiff and Appellant.

Louis S. Frenecke and Mack, Hazlewood, Franecke & Tinney for Defendant and Respondent.

**OPINION**

**KLINE, P. J.**—ETCO Corporation (ETCO) appeals from a declaratory judgment holding enforceable a provision of a lease between ETCO, as lessor, and respondent Ellen B. Hauer, as lessee, granting the lessee an option to renew the lease for five years at a rent to be determined by mutual agreement of the parties at the time of exercise of the option, and holding that such rent be established at $1,276 per month. We conclude that the lease provision, which contains no method or standards for determining the rent, is unenforceable and accordingly reverse.

The facts giving rise to this controversy are not in dispute: ETCO and Hauer entered into a written lease on April 22, 1976, covering commercial premises located at 1185 Mission Street in San Francisco, for a term of five years commencing May 1, 1976, at a rental of $880 per month for the first two years, with annual increases of $25 thereafter up to $955 for the fifth and last year of the term. The option provision in issue is contained in paragraph 28 of the lease and reads as follows: "Providing the Lessee has

faithfully performed all the terms, covenants and conditions contained herein during the term of this lease, Lessor grants the Lessee an option to extend the within lease for an additional period of five (5) years under the same terms and conditions except for the rent which shall be determined by mutual agreement at that time. Should the Lessee wish to avail herself of this privilege she must give Lessor notice in writing at least ninety (90) days prior to the termination of this lease."

Hauer gave timely notice of her desire to renew the lease, but the parties were unable to agree upon the rental for the extended term, ETCO contending that it should be between $2,500 and $3,000 per month and Hauer contending that it should be no more than $1,100 per month. In June 1981, ETCO filed a complaint seeking a declaratory judgment that the option provision in the lease is not enforceable and that since the parties were unable to agree upon a rental, no lease is in effect. The complaint alternatively requested that the court declare the fair rental value of the premises and establish that as the rent to be paid during the extended term in the event it determined that the option provision was enforceable.

After a trial by the court, judgment was entered declaring that Hauer was entitled to continue to lease the premises for a period of five years from May 1, 1981, at a monthly rental of $1,276, with an annual increase based upon a Bay Area consumer price index. The court also made findings of fact and conclusions of law, including the following: (a) "There is no standard or method set forth in the lease for the determination of the rental in the event that the lessor and the lessee are mutually unable to agree upon the rental during the extended period of the lease," and (b) "That this Court, in absence of mutual agreement of the parties thereto, is a Court of Equity, and may fix the amount of the rent thereto." With respect to that amount, the court held "That the measure of the amount of rent to be fixed by this Court of Equity is reasonable rent under the circumstances. The Court has taken into account all of the testimony received at trial, and the circumstances surrounding this case, including the following: (1) The reasonable intent and anticipation of the parties at the time the contract was entered into; (2) the small increase of rent provided for in the first five years of the lease; (3) the actual seven (7) to eight (8) percent increase in the cost of living per year, as testified to by the two plaintiff's experts; (4) the opinions as to the present fair market value of the premises, as testified to by the two experts; (5) the actual comparable rentals of neighboring property, as testified to by Mr. Ullmann [the manager of Hauer's electronics business conducted at the leased premises]; (6) the present dilapidated condition of the premises; (7) the ability of the defendant to pay an increased amount of rent, in view of the higher earnings of her business; (8) the lack of evidence regarding plaintiff's increased costs, if any, in connection with

the building; and (9) a balance of the equities on both sides." The court also found "There was testimony that the fair rental value of the premises at 1185 Mission Street, San Francisco, California, on May 1, 1981, if offered for rent on the open market under the ordinary circumstances, is at least two thousand five hundred sixty dollars ($2560) per month."

ETCO contends that the option provision is too uncertain to be enforceable, since it contains no ascertainable method, standard or guidelines for determining the amount of rent for the extended term. Hauer contends that the provision is enforceable, and that a court may properly establish a rent "reasonable under all of the circumstances" when the parties are unable to agree upon a rental for the extended term. We find present California law less than clear with respect to the enforceability of such a provision. We therefore will examine not only pertinent California decisions but also decisions of other jurisdictions which directly address this issue.

There is a division of authority as to the enforceability of a provision for the renewal or extension of a lease at a rental to be fixed by future agreement of the parties. The most traditional view has been that a provision for renewal or extension of a lease at a rental to be fixed by the parties is invalid and unenforceable for uncertainty, at least where the provision does not specify any guidelines or method for the fixing of the rent. (See, e.g., *Riis* v. *Day* (1980) 188 Mont. 253 [613 P.2d 696]; *Joseph Martin, Jr., Delicatessen, Inc.* v. *Schumacher* (1981) 52 N.Y.2d 105 [436 N.Y.S.2d 247, 417 N.E.2d 541]; *George Y. Worthington & Son Management Corp.* v. *Levy* (1964 D.C. App.) 204 A.2d 334; *Walker* v. *Keith* (1964 Ky.) 382 S.W.2d 198; *Rosenberg* v. *Gas Service Company* (1962 Mo. App.) 363 S.W.2d 20; *Slayter* v. *Pasley* (1953) 199 Ore. 616 [264 P.2d 444].) Jurisdictions following this view reason that courts cannot make contracts for parties nor compel parties to agree upon a contract.

A number of courts have held that provisions specifying some guidelines or method for determining future rent are sufficiently definite to be valid and enforceable. (See, e.g., *Riis* v. *Day, supra,* 613 P.2d 696; *Joseph Martin, Jr., Delicatessen, Inc.* v. *Schumacher, supra,* 417 N.E.2d 541; *Slayter* v. *Pasley, supra,* 264 P.2d 444.) Examples of such provisions are ones requiring determination of rent by arbitration or appraisal, or with reference to fair market rents for similar properties at the time of establishment of the future rent. (See generally, Annotation, Validity and Enforceability of Provision for Renewal of Lease at Rental to Be Fixed by Subsequent Agreement of Parties (1974) 58 A.L.R.3d 500.)[1] Courts adhering to this view reason

---

[1]This annotation discusses the decisions of various jurisdictions on the enforceability issue. Noting the substantial difference of opinion on the issue, the annotation makes no attempt to label any particular view as "a majority view." (58 A.L.R.3d 500, 505.)

that they are not making a new contract for the parties but merely compelling the parties to do what they contemplated at the time they initially contracted.

A third view is that a renewal provision is valid if the contract shows the parties' mutual consent to meet in the future to negotiate further provisions for rent, even though no method for determining future rent has been set forth. (See, e.g., *Cassinari* v. *Mapes* (1975) 91 Nev. 778 [542 P.2d 1069]; *Moolenaar* v. *Co-Build Companies, Inc.* (1973 D. V.I.) 354 F.Supp. 980; *Playmate Club, Inc.* v. *Country Clubs, Inc.* (1970) 62 Tenn. App. 383 [462 S.W.2d 890, 58 A.L.R.3d 494]; *Moss* v. *Olson* (1947) 148 Ohio St. 625 [76 N.E.2d 875]; *Hammond* v. *Ringstad* (1945) 10 Alaska 543.) Courts adopting this rule reason that the contract implies a mutual agreement to provide for a future "reasonable" rent, which can be determined by a court under the particular circumstances of the case when parties fail to agree, and that the rule effectuates the intent of the parties.

■ The general rule in California regarding contracts to agree in the future was reviewed in *Ablett* v. *Clauson* (1954) 43 Cal.2d 280, 284-285 [272 P.2d 753]: "'Although a promise may be sufficiently definite when it contains an option given to the promisor or promisee, yet if an essential element is reserved for the future agreement of both parties, the promise can give rise to no legal obligation until such future agreement. Since either party by the terms of the promise may refuse to agree to anything to which the other party will agree, it is impossible for the law to affix any obligation to such a promise.' (1 Williston, Contracts (rev. ed. 1936) 131, § 45.) The rule is well established in this state (*Autry* v. *Republic Productions, Inc.* [1947] 30 Cal.2d 144, 151 [180 P.2d 888]; *Vangel* v. *Vangel* [1953] 116 Cal.App.2d 615, 631 [254 P.2d 919]; *Howard* v. *Burrow* [1926] 77 Cal.App. 4, 8 [245 P. 808]), and, in conformity with the weight of authority in other states [citation], it has been held that an option agreement which leaves an essential term to future agreement is not enforceable. (*Morrison* v. *Rossignol* [1855] 5 Cal. 64, 65-66; cf. *Los Angeles Soda Works* v. *Aquazone Co.* [1930] 103 Cal.App. 105, 106 [284 P. 253]; *Autry* v. *Republic Productions, Inc.*, *supra*, p. 155.)."

*Ablett* involved an option to renew a lease for a period of five years "'upon terms to be then agreed upon.'" (*Ablett* v. *Clauson*, *supra*, 43 Cal.2d 280, 281.) The court there found the option provision too uncertain to make it enforceable as a contract right. (*Id.*, at p. 286.) The *Ablett* court noted, with no expression of approval or disapproval, that where the only term of the new lease requiring the agreement of the parties is the fixing of rent, some courts have adopted an exception to the general rule. It cited as examples cases upholding provisions requiring the rent to be fixed by ar-

bitration and interpreting option provisions to require the fixing of a " 'reasonable rental under the circumstances.' " (*Id.*, at p. 285.)

Hauer relies heavily upon *Chaney v. Schneider* (1949) 92 Cal.App.2d 88 [206 P.2d 669], in which the court found enforceable a lessee's right of first refusal to lease for an additional term "at rentals and terms to be agreed upon at that time." The *Chaney* court expressed the view that "[i]f there is in the writing a sufficient definite standard or method for the determination of the rental, and if the amount thereof is the only thing to be determined, courts of equity will hold that the parties agreed upon a reasonable rental for the extension, and will declare it if they do not agree. [Citations.]." (*Id.*, at p. 89). That court, however, did not follow that rule, for the lease in question there did not contain any ascertainable standards for establishing the rent.

In *Ablett,* the Supreme Court, acknowledging that *Chaney* had held enforceable an option provision very similar to the one involved in *Ablett,* said with respect to *Chaney,* "Although there is an intimation in other decisions that a court of equity is empowered to fix a reasonable rental under an option provision reserving that matter to the future agreement of the parties [citations], the extensions of the rule suggested by the Chaney decision seem seriously questionable. . . . [C]ertainly the Streicher case is not authority for the proposition, relied upon in the Chaney decision, that the court may fix all of the provisions of a new lease without ascertainable standards in the option agreement. (Cf. *Autry v. Republic Productions, Inc., supra,* 30 Cal.2d 154-155.)" (*Ablett v. Clauson, supra,* 43 Cal.2d 280, 286.)[2]

In view of the criticism of *Chaney* by the Supreme Court in *Ablett,* we do not find it to be persuasive authority in support of Hauer's position. Additionally, we find it factually distinguishable from this case. In *Chaney,* the leased property was a bare lot to be used as a trailer court. The lessee expended over $10,000 in improvements, and it was clear that the lessee would lose most of the value of the improvements (which included sewer, water, gas, light and other connections) upon termination of the lease. The lessor refused to negotiate with respect to a new rental and stated that she would like to have her son run the park. Contemplating the loss of improvements to the lessee under these circumstances, the court stated, "It is this phase of the case which causes one to pause and consider whether or not as a matter of law the contract really should be held impossible of enforcement

---

[2]In *Streicher v. Heimburge* (1928) 205 Cal. 675, 676-677 [272 P. 290], the court upheld as enforceable an option provision providing that if the parties could not agree upon a rental, it would be determined by appraisers.

because of uncertainty." (*Chaney* v. *Schneider, supra,* 92 Cal.App.2d 88, 90.) No such improvements were made here. We think the circumstances of *Chaney* are more consistent with the view that under the facts of that case the lessor was estopped to deny that the lessee had an absolute right to renew the lease, rather than with a broad view that option provisions without ascertainable standards for determining rent can generally be enforced. (Cf. *Ablett* v. *Clauson, supra,* 43 Cal.2d 280, 286-287 [noting the availability of an estoppel theory in an action to enforce such an option provision].)

Hauer urges that *Ablett* stands for the proposition that where only one term of the contract is to be fixed, then the court will fix a reasonable term, but the court will not rewrite and fix multiple terms. We do not so read *Ablett.* While that case did involve a provision requiring that all terms of a renewal lease be determined, we do not see the multiplicity of terms as the focus of the court's concern. The principal concern was that courts not write contracts for parties who have expressed no standards in their agreements for the establishment of such terms.[3] The *Ablett* court cited *Autry* v. *Republic Productions, Inc.* (1947) 30 Cal.2d 144 with respect to that concern. Although *Autry* did not involve a lease, it did involve a contract provision that upon the happening of a certain contingency the parties would " 'agree upon their mutual rights and obligations.' " (*Id.,* at p. 147.) The court there held that where it is ascertainable that the intention of the parties was to reopen negotiations concerning their future rights, courts will not write their agreements for them in the event the parties themselves cannot agree. (*Id.,* at pp. 154-155.)

Finally, Hauer contends that the trial court applied some ascertainable indicia, both intrinsic and extrinsic to the contract, to establish a reasonable rent. This is wishful thinking. Some of the factors considered by the trial court (such as "the reasonable intent and anticipation of the parties at the time the contract was entered into") are highly speculative; others (such as "the ability of the defendant to pay an increased amount of rent") are simply irrelevant even if ascertainable.[4] The single finding of the trial court

---

[3]*Roberts* v. *Adams* (1958) 164 Cal.App.2d 312 [330 P.2d 900] also refutes Hauer's argument that courts will fix one term but not multiple terms of a contract. That case involved an option to purchase property for $85,000, "payable as mutually agreed by both parties." Only the method of payment needed to be fixed. The court held that "in the absence of internal or external indicia of what the parties would have agreed upon, the court cannot supply the omitted provision, for that would amount to making a contract for the parties." (*Id.,* at p. 315.) And, the *Roberts* court cited *Ablett's* criticism of *Chaney* and observed, "This leaves the Chaney decision in such status that it cannot be accepted as controlling at bar." (*Id.,* at p. 320.)

[4]The factors relied upon by the trial court in setting the rent are all set forth, *ante,* at pages 1156-1157.

which is both indisputable and dispositive is that no standard or method was set forth in the lease for determination of the rental for the extended period.[5]

■ We conclude that a provision for renewal of a lease at a rent to be determined in the future is enforceable, absent agreement of the parties, only if the lease agreement contains an ascertainable standard for the determination of such rent. We believe that this rule recognizes the reality that fluctuating market conditions will often preclude the determination of an appropriate rent for a renewal period at the time an initial lease is made, yet prevents the courts from being required to engage in the drafting of contracts for parties in the absence of guidelines for an objective determination of such rent.[6]

Other courts, in adopting this rule, have expressed similar views. The *Riis* v. *Day* court said of the rule: "It recognizes the business utility of renewal provisions. Such provisions often do provide the inducement for entering the original lease. But, given fluctuating market conditions, the parties cannot fairly determine what would be an adequate rent in the future. At the same time, this standard also adheres to the wisdom of the old rule. It recognizes the danger of courts arbitrarily interpolating provisions into an arm's length transaction to breathe life into an otherwise invalid agreement." (*Riis* v. *Day, supra,* 613 P.2d 696, 698; accord, *Slayter* v. *Pasley, supra,* 264 P.2d 444, 449.) More recently, in holding unenforceable a provision that rent for a renewal period was "to be agreed upon," the court in *Joseph Martin, Jr., Delicatessen, Inc.* v. *Schumacher, supra,* 417 N.E.2d 541, stated: "This is not to say that the requirement for definiteness in the case before us now could only have been met by explicit expression of the rent to be paid. The concern is with substance, not form. It certainly would have sufficed, for instance, if a methodology for determining the rent was to be found within the four corners of the lease, for a rent so arrived at would have been the end product of agreement between the parties themselves. Nor would the agreement have failed for indefiniteness because it invited recourse to an objective extrinsic event, condition or standard on which the amount was made to depend." (*Id.,* at p. 544.)

---

[5]Although extrinsic evidence may have been admissible to prove a method contemplated by the parties for establishing such rent (see *Garcia* v. *Truck Ins. Exchange* (1984) 36 Cal.3d 426, 435 [204 Cal.Rptr. 435, 682 P.2d 1100]), no evidence whatsoever was introduced at trial as to the intention of the parties at the time the lease was made.

[6]The result in this case in the court below aptly demonstrates the problem with courts setting rents in such a situation without standards set forth in the parties' agreement. While the court considered many factors, they were all of the court's own choosing without any indication as to factors contemplated by the parties at the time of contracting.

Since the lease provision in this case contains no ascertainable standards for determining rent for the renewal period, it is unenforceable.[7] The judgment of the trial court is reversed with directions to enter a declaratory judgment in favor of ETCO, declaring the option provision in the lease unenforceable and declaring that the lease is no longer in effect between the parties.

Rouse, J., and Smith, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 28, 1985.

---

[7]Obviously, many different standards could be provided for by the parties. We do not undertake here a discussion of all the types of provisions which might be included. For a discussion of factors which parties might choose in setting forth a method or standard for determining rent, see Annotation, Factors and Elements Considered in Fixing Rental for Extended or Renewal Term Where Renewal or Extension Clause Leaves Amount of Rental for Future Determination (1949) 6 A.L.R.2d 448.