[No. G031703. Fourth Dist., Div. Three. Feb. 27, 2004.]

ROBERT T. MINER, M.D., INC., Plaintiff, Cross-defendant and Appellant,
v.
TUSTIN AVENUE INVESTORS, LLC, Defendant, Cross-complainant and
Respondent.

[No. G032006. Fourth Dist., Div. Three. Feb. 27, 2004.]

TUSTIN AVENUE INVESTORS, LLC, Plaintiff and Respondent, v.
ROBERT T. MINER, M.D., INC., Defendant and Appellant.

COUNSEL

Terry A. Jones for Plaintiff, Cross-defendant and Appellant and for Defendant and Appellant.

Grant & Morasse and Desmond J. Collins for Defendant, Cross-complainant and Respondent and for Plaintiff and Respondent.

OPINION

**FYBEL, J.**—In 1997, the plaintiff tenant and the predecessor of defendant landlord entered into a commercial lease including an addendum (Lease). The Lease expired in August 2002 and contained an option enabling the tenant to renew the Lease exercisable no later than June 2002. In November 2001, the tenant signed an estoppel certificate (Estoppel Certificate) stating the Lease was then in full force and effect. The Estoppel Certificate also contained a clause stating the tenant had no options "except as follows." This statement was followed by blank lines, which were not filled in. After a controversy arose concerning the option, the tenant sued the landlord for, among other things, declaratory relief, claiming he exercised his option rights in June 2002 and was entitled to remain in possession. The landlord cross-complained in an unlawful detainer case.

The landlord moved for summary adjudication on its defense to the complaint and on the tenant's affirmative defense to the cross-complaint. The landlord's motion was based on the contention the Estoppel Certificate eliminated the option contained in the Lease. The trial court granted the landlord's motion for summary adjudication in its entirety. The unlawful detainer action was tried and judgment entered on the complaint and cross-complaint in favor of the landlord.

 We conclude the Lease and Estoppel Certificate constitute the contract to be interpreted and, read together, are ambiguous on the question whether an option existed. Neither party offered evidence extrinsic to the Lease or the Estoppel Certificate to explain this ambiguity. We interpret the language of the Lease and Estoppel Certificate against the landlord, whose predecessor drafted both documents, and interpret the whole of the contract.

(Civ. Code, §§ 1654, 1641.) In its motion for summary adjudication, defendant landlord did not meet its initial burden to establish the tenant did not have an option. (Code Civ. Proc., § 437c , subd. (p)(2).) Therefore, we reverse.

## I

In April 1997, plaintiff Robert T. Miner (Miner),[1] a medical doctor, as tenant, signed a lease with defendant's predecessor in interest, as landlord, for about 2,300 square feet in a commercial building in Santa Ana for use as a general medical and surgical office. Miner's rent started at $1.30 per square foot per month and escalated to $1.463 per square foot when the lease was set to expire in August 2002.

Under an addendum to the lease, also dated in April 1997, Miner had an option to extend the lease for an additional five years, until August 2007, provided he was not in default and gave written notice to the landlord by 90 days before the expiration of the lease. As noted, the lease and the addendum are collectively referred to herein as the Lease. The 90th day before the Lease expired in August 2002 fell in June. The option rent was pegged at "the greater of market rent, or the rent adjustment of 3% over the rent currently being paid by Lessee at the time of exercise of option."

Defendant Tustin Avenue Investors, LLC (TAI), purchased the property in late 2001. In connection with the sale, Miner executed an Estoppel Certificate dated November 21, 2001, stating in paragraph 1, "[t]he Lease is in full force and effect; there are no other promises, agreements, understandings or commitments between Landlord and Tenant relating to the Leased Premises . . . ." He also acknowledged, among other things, he had no pending claims under the Lease, had not prepaid any rent, and was not a debtor in any bankruptcy proceedings.

The last paragraph of the Estoppel Certificate, paragraph 7, provided: "Tenant has no options, rights of first refusal, termination, or exclusive business rights except as follows:_____

_____

_____."
The lines with blank space were not filled in. Miner signed and dated the Estoppel Certificate as presented.

In May 2002, six months after signing the Estoppel Certificate, Miner notified TAI of his interest in extending the Lease and exercising his option

---

[1] For convenience, we refer to plaintiff as a natural person instead of a professional corporation.

rights. The parties negotiated the rental rate into the summer, but were unable to agree upon the amount. On August 14, 2002, TAI mailed Miner a new lease amendment, calling for an increased rent to $1.95 per square foot. TAI gave Miner five days to sign and return the amendment.

Miner did not sign or return the amendment. Instead, he sued TAI for declaratory relief, seeking a judicial declaration of "what the base rental rate for Plaintiff's suite should be during the renewal term of lease for the next five years." TAI responded by filing an unlawful detainer action. The two actions were consolidated.

In October 2002, TAI moved for summary adjudication of Miner's causes of action and the affirmative defense to the cross-complaint. In its motion, TAI relied solely upon the Estoppel Certificate to claim Miner had no option rights in connection with the property. TAI cited Evidence Code section 622[2] and *Plaza Freeway Ltd. Partnership v. First Mountain Bank* (2000) 81 Cal.App.4th 616 [96 Cal.Rptr.2d 865] (*Plaza Freeway*) and argued the Estoppel Certificate created a "conclusive presumption" that Miner lost his option rights. TAI submitted no evidence other than the Lease and the Estoppel Certificate.

In opposition, Miner argued the Estoppel Certificate was ambiguous as to whether he had option rights. He contended paragraph 7 applied only to "*other* options, firsts [*sic*] rights of refusal, etc. which are not already part of the lease itself. It is common that parties enter into separate agreements for options to *purchase* real estate or first right of refusal to purchase a building, etc.[] Paragraph 7 informs the buyer of such outside agreements."

The trial court (Judge Cannon) granted summary adjudication based upon the Estoppel Certificate and the conclusive presumption in Evidence Code section 622, as explained in *Plaza Freeway, supra,* 81 Cal.App.4th 616. The court observed that *Plaza Freeway*'s application was problematic: "Well, I've read the case, and . . . every time I read it I get a slightly different bent . . . ." The court hoped the issue would be resolved elsewhere: "Unfortunately, I don't know if there's enough money in this to involve an appeal or not, but it's probably an issue that ought to be brought before the appellate court, at least to the appellate court, if not to the Legislature, so that it can be addressed."

TAI's unlawful detainer action was tried in January 2003. In its rulings on the unlawful detainer action and in entry of judgment, the trial court (Judge

---

[2] Evidence Code section 622 provides: "The facts recited in a written instrument are conclusively presumed to be true as between the parties thereto, or their successors in interest; but this rule does not apply to the recital of a consideration."

Carney) had no choice but to "deem[] to be established" the causes of action, defense and affirmative defense in accordance with the summary adjudication previously granted. (See Code Civ. Proc., § 437c, subd. (n)(1).)

Judgment was entered for possession of the property in favor of TAI. The court also awarded TAI the sum of approximately $15,000 in attorney fees and costs. Pending this appeal, Miner has remained in possession of the property after agreeing to conditionally pay TAI's requested rate hike.

## II

■ TAI, as the moving party on a motion for summary adjudication, bears "the burden of persuasion" that there are no triable issues of material fact and it is entitled to judgment as a matter of law. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*).) TAI also "bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if [it] carries [its] burden of production, [it] causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Ibid.*) "A prima facie showing is one that is sufficient to support the position of the party in question." (*Id.* at p. 851.) Therefore, under Code of Civil Procedure section 437c, subdivision (p)(2), the burden of production shifted to Miner only if TAI met its initial burden to show the cause of action had no merit or that there was a complete defense to that cause of action. (*Aguilar, supra,* at p. 850.)

On appeal from a judgment based on an order granting summary adjudication, we review the record de novo. (*Village Nurseries v. Greenbaum* (2002) 101 Cal.App.4th 26, 35 [123 Cal.Rptr.2d 555].) We strictly construe the evidence of the moving party and liberally construe that of the opponent, and resolve any doubts as to the propriety of granting the motion in favor of the latter. (*Zavala v. Arce* (1997) 58 Cal.App.4th 915, 926 [68 Cal.Rptr.2d 571].)

TAI claims the Estoppel Certificate, on its face, establishes that Miner has no option rights. TAI did not introduce any extrinsic evidence to explain the meaning of the terms in the Estoppel Certificate.

■ In determining whether Miner has any option rights, we interpret the parties' contract. As in *Founding Members of the Newport Beach Country Club v. Newport Country Club, Inc.* (2003) 109 Cal.App.4th 944, 953, [135 Cal.Rptr.2d 505] (*Founding Members*), we apply contract principles and ask the threshold question: What constitutes the contract? In this case, the contract consists of the Lease and the Estoppel Certificate and is fully integrated. Why? The

Lease contained the option rights and the Estoppel Certificate referenced the Lease as being in full force and effect. No extrinsic evidence was offered to explain or supplement the terms of the contract. Accordingly, when the Estoppel Certificate refers to the Lease as being in full force and effect, the answer to the question of whether option rights exist—as in this case—is found in reading the Lease and the Estoppel Certificate together.

■ When there is no extrinsic evidence introduced, we independently construe the contract. (*Founding Members, supra,* 109 Cal.App.4th at p. 955.) The basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting. (Civ. Code, § 1636.) Where, as here, there is a written contract, the parties' intention is determined from the writing alone, if possible. (Civ. Code, § 1639.)

■ There is an ambiguity in the contract because the Lease contains an option, but the Estoppel Certificate states (1) the Lease remains in effect and (2) there are no options "except as follows," and the lines that follow are not filled in. These contradictory provisions create an ambiguity as to whether an option exists as of the date of the Estoppel Certificate. None of the rules of construction in the Civil Code removes this ambiguity. As provided in Civil Code section 1654: "In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." Under these rules, the Lease and Estoppel Certificate should be interpreted against the landlord. ■ In addition, Civil Code section 1641 requires that "[t]he whole of a contract is to be taken together, so as to give effect to every part . . . ." The landlord's interpretation of the Estoppel Certificate ignores paragraph 1 of the Estoppel Certificate and its reference to the Lease. Therefore, the landlord did not carry its initial burden on its summary adjudication motion to establish as a matter of law that no option existed.

TAI's reliance on *Plaza Freeway, supra,* 81 Cal.App.4th 616, is misplaced. In *Plaza Freeway,* a 25-year lease was ambiguous about the lease term in a build-to-suit lease for a bank building in a neighborhood shopping center. (*Id.* at pp. 619–620.) An addendum specifying the actual commencement date was never found. (*Id.* at p. 620.) Decades later, in conjunction with the sale of the building to a new owner, the then-current tenant signed and delivered an estoppel certificate to the owner, stating, " 'The term of this Lease commenced on November 1, 1973 and will expire on October 31, 1998.' " (*Id.* at p. 627.)

The court in *Plaza Freeway* found the tenant was bound by the explicit representations of fact contained in the estoppel certificate and was "estopped from contradicting the termination date set forth in its estoppel certificate."

(*Plaza Freeway, supra,* 81 Cal.App.4th at p. 629.) "In this case, where the exact termination date was unknown, the estoppel certificate served to set forth the key terms of the lease agreement, as understood by the tenant at the time of plaintiff's purchase of the property. Even if the estoppel certificate contains an erroneous recitation of the lease terms, the facts contained in the certificate are conclusively presumed to be true under [Evidence Code] section 622." (*Id.* at p. 628, fns. omitted.)

*Plaza Freeway* correctly states the governing principles, but application of these principles results in reversal here. The Estoppel Certificate in this case, when read with the Lease, created an ambiguity as to the existence of an option. The option term was unclearly stated in the lease in *Plaza Freeway,* but clearly stated in the estoppel certificate. Here, we deal with precisely the opposite situation: an option term that is clearly stated in the Lease, but unclearly stated in the Estoppel Certificate. The problematic paragraph 7 of the Estoppel Certificate has blanks, and so the question remains: What does it mean? TAI's interpretation is that this paragraph eliminates the option provision in the Lease. But paragraph 1 of the Estoppel Certificate provides that "[t]he Lease is in full force and effect," and there are no qualifications, other promises, agreements or understandings. The Lease contains an option provision. There is no exception in paragraph 1 of the Estoppel Certificate for the option provision, and we decline to judicially insert one.

Civil Code section 1647 provides that "[a] contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates." Accordingly, an equally plausible explanation is that paragraph 7 is intended to identify option provisions that are separate and independent from those contained in the Lease. Provisions like paragraph 7 are designed, among other things, to foreclose subsequent attempts by tenants to revive expired options, or to extend terminated option deadlines. Estoppel certificates are also meant to prevent disputes over whether an existing option already has been effectively exercised. Thus, the purpose of paragraph 7 in this case could be to cut off option claims beyond those expressed in the four corners of the parties' contract, as embodied in the Lease and Estoppel Certificate, or to notify the landlord of option rights not contained in the Lease.

The Estoppel Certificate does not state Miner waived his option rights, or that these option rights were somehow terminated. TAI has offered no evidence that Miner waived his option rights or the rights were terminated. He signed the Estoppel Certificate more than six months before he had the right to exercise the option provided in the Lease—the same Lease that is confirmed in paragraph 1 of the Estoppel Certificate. There is no justification for adding an express waiver into the landlord-supplied Estoppel Certificate when the landlord itself did not choose to do so.

Our analysis is consistent with basic principles of commercial real estate law. Lease options give tenants legal rights to exercise contractual rights to remain on the premises beyond the original lease term. These rights may be important factors in inducing tenants to enter into a lease. "Options to renew are common in commercial leases. Commercial tenants generally have strong economic motives for renewing a lease, such as recovering a reasonable return on investments in trade fixtures, avoiding the costs of moving, and maintaining the good will attached to the particular location." (Cal. Civil Practice (2003) Real Property Litigation, § 25.10.)

Estoppel certificates are equally critical to landlords because they affect their ability to sell commercial real property and to secure financing. Estoppel certificates inform prospective buyers and lenders of the lessees' understanding of a lease agreement. By providing independent verification of the presence or absence of any side deals, estoppel certificates prevent unwelcome post-transaction surprises that might adversely affect the building's income stream, such as: Has the tenant prepaid any rent? Does the tenant have any known or suspected claims for lease violations? What is the tenant's understanding of provisions in the lease? Are there any modifications or amendments? Did the tenant pay a security deposit? Has the landlord made all the requested improvements? Are there any subleases or assignments? Is the tenant solvent? (See discussion in *Plaza Freeway, supra,* 81 Cal.App.4th at p. 626, citing Greenwald & Asimow, Cal. Practice Guide: Real Property Transactions (The Rutter Group 1999) ¶ 7.292, p. 7-73 (rev. # 1, 1997).)

For these reasons, commercial leases routinely contain provisions requiring tenants to sign estoppel certificates upon request. The subject Lease is no exception. Paragraph 17 of the Lease obligated Miner to provide an estoppel certificate upon not less than 10 days' notice, upon pain of being considered in material default of the Lease, and provided further that "[a]ny such statement may be conclusively relied upon by any prospective purchase or encumbrance of the Office Building Project or of the business of Lessee."

For the reasons explained above, TAI did not meet its initial burden of showing Miner lacked option rights under the Lease and the Estoppel Certificate; therefore, the burden of production never shifted to Miner. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar, supra,* 25 Cal.4th at p. 850.) Our decision leaves all issues open for trial, including the meaning of the Estoppel Certificate (should there be any competent extrinsic evidence on the subject), as well as the viability of Miner's attempts to exercise his option. The

attorney fee award for TAI falls with the reversal of the judgment upon which it is based. (*Giles v. Horn* (2002) 100 Cal.App.4th 206, 241 [123 Cal.Rptr.2d 735].)

## III

The option to extend the Lease provides that rent for the option period "shall be adjusted to the greater of market rent, or the rent adjustment of 3% over the rent currently being paid by Lessee at the time of exercise of option." Relying on *Etco Corp. v. Hauer* (1984) 161 Cal.App.3d 1154 [208 Cal.Rptr. 118] (*Etco*), Miner asks that we declare this lease provision for "market rent" to be too vague to be enforceable. Instead, he wants us to allow him to exercise his option, but to limit his rent increase to 3 percent.

Some option provisions are so uncertain as to amount to nothing more than an agreement to agree. *Etco, supra,* 161 Cal.App.3d 1154, 1155, involved a lease option providing for rent to be determined by mutual agreement of the parties at the time of exercise of the option. In *Etco,* the court asked if the lease agreement contained an "ascertainable standard" for the determination of rent and concluded it did not. (*Id.* at pp. 1161–1162.) Similarly, in *Ablett v. Clauson* (1954) 43 Cal.2d 280, 284 [272 P.2d 753], the option agreement extended the lease upon " 'terms to be then agreed upon.' " Our Supreme Court stated, "[A]n option agreement which leaves an essential term to future agreement is not enforceable." (*Id.* at p. 285.)

But option agreements may be enforceable even where they do not specify the exact amount of future rents, so long as there is an ascertainable standard for the determination of rent. (See *Etco, supra,* 161 Cal.App.3d at p. 1161.) In such situations, courts "are not making a new contract for the parties but merely compelling the parties to do what they contemplated at the time they initially contracted." (*Id.* at pp. 1157–1158.)

It is premature to decide issues regarding the "market rent" provision without the benefit of a trial court record. As TAI points out, neither party developed the issue in the trial court because the matter was made moot by the summary adjudication. On remand, both sides are free to raise the appropriate factual and legal arguments on these and other issues.

## DISPOSITION

The judgment is reversed and remanded to the trial court for further proceedings. The order awarding attorney fees is reversed. Appellant is to recover costs on appeal.

Sills, P. J., and Aronson, J., concurred.