In re James E. MOORE a/k/a James Moore, Debtor.

Richard D. STEFFAN, Trustee/Plaintiff,

v.

Elmer R. MALAKOFF, Loran Janak, Edner Ruth Janak, Mary Ellen Janak, individually and as Executor of the Estate of Leslie Earl Janak, and James E. Moore, Defendants.

Bankruptcy No. 284–01120–B–7.
Motion No. RDS–1.
Adv. Pro. No. 287–0133.

United States Bankruptcy Court,
E.D. California.

March 27, 1989.

Linda A. Selig, Sacramento, Cal., for Loran Janak, Edner Ruth Janak, Mary Ellen Janak, individually and as Executor of the Estate of Leslie Earl Janak.

Richard. D. Steffan, Auburn, Cal., for trustee.

## MEMORANDUM OF DECISION

DAVID E. RUSSELL, Bankruptcy Judge.

Richard D. Steffan, Esq., Trustee of the above-entitled Chapter 7 bankruptcy estate brought this motion for summary judgment regularly before this court on November 15, 1988. Linda A. Selig, Esq., opposed the motion on behalf of Loran Janak, Edner Ruth Janak, Mary Ellen Janak, individually and as Executor of the Estate of Leslie Earl Janak (hereinafter "The Janaks"). The matter was taken under submission following oral argument.

## UNDISPUTED FACTS

The Janaks own certain real property located at 2980, 2982, 2984, and 2986 35th Street in Sacramento, California which will hereinafter be referred to as the "35th Street premises". On or around July 9, 1976 James E. Moore (hereinafter "Moore") and Earl Janak, Loran Janak, and Janak and Scurfield, Inc., signed a letter of intent to enter into a limited partnership agreement to lease the 35th Street premises.

A dispute subsequently arose between the parties to the partnership agreement and, in an effort to resolve the ensuing litigation, those parties agreed that Moore would be granted an option to purchase the 35th Street premises for $95,000.00 on or around a date certain[1] according to the terms of an option agreement finalized and fully executed on April 8, 1981. (See Ex. "A" to Adversary Complaint No. 287-0133, Filed April 3, 1987).

Specifically at issue in the above-entitled motion for summary judgment is the following provision relating to the assignability of the rights under the option agreement:

7. *Assignability.* Except as provided herein, MOORE may not assign this Agreement without the written consent of JANAKS. In the event an attempt of assignment is made in violation of this provision, then MOORE's rights under this Agreement shall automatically terminate without notice. Within one month from the date hereof, MOORE, by giving written notice to JANAKS specifically naming the assignee, shall be permitted to once assign to a third party a beneficial interest in MOORE's option rights in a specified amount not to exceed 15%. In the event such an assignment occurs, such assignee shall not be entitled to exercise the option without MOORE's signature thereon indicating that MOORE is also exercising the option. Moreover, in the event of MOORE's death or disability, rights under this option shall pass to his heirs, devisees or conservator, as the case may be.

Pursuant to the above provision, Moore assigned a 15% interest to Elmer R. Malakoff on June 10, 1981.[2]

An involuntary Chapter 7 petition in bankruptcy was filed against Moore on March 28, 1984 and an order for relief was subsequently entered. In September, 1986, the Trustee, having succeeded to Moore's interest in the 35th Street premises, attempted to move this court to approve the sale of the estate's interest under the op-

---

1. The option may only be exercised on or between the dates of January 1, 1991 and January 15, 1991. (Agreement, supra, at ¶ 2).

2. Although the assignment to Malakoff was executed more than one month following the effective date of the option agreement, the assignment was nonetheless timely due to the provisions of a subsequent agreement entered into between the parties to the option on May 20, 1981 which extended the deadline for assignment of a 15% interest to thirty days from May 12, 1981. (Ex. "A–M2" to Adversary Complaint, supra).

tion agreement. The Janaks, however, refused to consent to an assignment by the Trustee to any entity other than Janak & Scurfield, Inc., a Janak family operated business which had offered $16,000.00 for the option. In light of the fact that overbids by third parties substantially exceeding Janak & Scurfield, Inc.'s offer had been extended to the Trustee but could not be accepted without the consent of the Janaks under the option agreement, the Trustee was compelled to file the above-entitled adversary complaint for the purpose of determining the effect and validity of the above-described assignability clause.

## DISCUSSION

F.R.Civ.P. 56(c) provides the following pertinent guidelines to which a court must adhere when determining the merits of a motion for summary judgment;

> (c) **Motion and Proceeding Thereon.** ... The [summary] judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law ...

Inferences to be drawn from the underlying facts presented in the moving papers must be viewed in a light most favorable to the party opposing the summary judgment motion. (*United States v. Diebold, Inc.,* (1962) 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176).

Once the moving party has met its burden of coming forward with proof of the absence of any genuine issues of material fact, the respondent bears the burden of rebuttal. (*Celotex Corp. v. Catrett,* (1986) 477 U.S. 317, 321, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265; *Adickes v. Kress & Co.,*

(1970) 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142). If the responding party fails to make a sufficient showing which establishes the existence of an essential element to that party's case upon which it bears the burden of proof at trial, summary judgment may be granted. (*Celotex Corp. v. Catrett,* supra, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552–2553).

■ This court must find for the reasons set forth below that this complaint is ripe for summary judgment in favor of the Trustee. As a preliminary matter, although it is undisputed that Moore's 85% interest in the option agreement is clearly property of the estate as contemplated in 11 U.S.C. § 541(a)(1)[3], this court must reject the Trustee's contention that 11 U.S.C. § 541(c)(1)(A)[4] was intended to void any valid contractual provisions which would otherwise have the effect of restricting the transferability of that interest. Rather, the Ninth Circuit Court of Appeals has unambiguously interpreted § 541(c)(1)(A) as "avoid[ing] only those restrictions which prevent transfer of the debtor's property to the estate". (*In re Farmers Markets, Inc.,* 792 F.2d 1400, 1402 (9th Cir.1986). (Emphasis added)).

■ Thus, in order to determine the validity of a non-assignability clause as against a third party other than the Trustee, this court must look to state law. (4 Collier on Bankruptcy ¶ 541–02 at 541–10–11 (15th Edition); the existence and nature of a debtor's interest in property is to be determined by non-bankruptcy law). The California Supreme Court in *Kendall v. Ernest Pestana, Inc.,* (1985) 40 Cal.3d 488, 220 Cal.Rptr. 818, 709 P.2d 837 declared that where a commercial lease provided for the assignment of rights only upon prior consent of the lessor, such consent could be withheld only if the lessor presented a "commercially reasonable objection to the

---

**3.** 11 U.S.C. § 541(a)(1) includes "all legal or equitable interest of the debtor in property as of the commencement of the case" as property of the estate. (*United States v. Whiting Pool, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515).

**4.** 11 U.S.C. § 541(c)(1)(A) provides in pertinent part that "... an interest of the debtor in prop-

erty becomes property of the estate under ... this section **notwithstanding any provision in an agreement,** transfer instrument, or applicable nonbankruptcy law—

(A) that restricts or conditions transfer of such interest by the debtor ..." (Emphasis added).

assignee or the proposed use". (40 Cal.3d at 506–507, 220 Cal.Rptr. 818, 709 P.2d 837). This court agrees that the holding in *Kendall* is applicable to the facts of this case.

The California Supreme Court's rationale in *Kendall* was based upon the combined policies of reducing restraints on alienation of interests in real property and promoting the implied contractual duty of good faith and fair dealing. (Supra, at 506, 220 Cal. Rptr. 818, 709 P.2d 837). Thus, the Court's holding should naturally apply to *any* agreement which restricts the transferability of an interest in real property. In any event, this court can conceive of no compelling reason why this rule should not be applied to a similar assignment provision in an option agreement for the sale of real property. The holder of an option to purchase a fee simple interest in real property, regardless of whether that entity is the original optionee or an assignee thereto, has, unlike a leaseholder, no continuing relationship with the optionor once the option has been exercised. Thus, there are even fewer compelling policy reasons to rationalize an effort to restrain the alienability of such an interest under an option contract.

Despite numerous opportunities to do so, the Janaks have failed to set forth any commercially reasonable objections to the assignment of the option to a party other than Janak & Scurfield, Inc.[5] If the Janaks cannot, or will not, specify *any* reasonable objections to the judicially supervised sale of the option to the highest bidder, then this court has no choice but to conclude that there are no reasons, commercial, or otherwise.

The mere transfer of the option clearly would not affect the Janak's present proprietary interests in the premises because the option agreement does not contemplate the transfer of any interest less than a fee simple on a date certain. In any event, even assuming that only the Trustee could exercise the option, the Janaks would have no standing to object thereafter to the subsequent transfer of title to a third party. Thus, it is clear that the Janaks would sustain no greater prejudice by the immediate transfer of the option to a third party than they would if the property were transferred to such party following the exercise of the option in 1991.

Finally, it must be noted that the assignment clause expressly provides that the option "shall pass to [Moore's] heirs, devisees, or conservator" if Moore should die or become incompetent before the option date. It seems to this court that such a clause allowing the interest to pass to a devisee or appointee without the consent of the Janaks would not have been allowed if the latter were so vehemently opposed to the assignment of the option to a third party.

Due to a complete failure by the Janaks to rationally explain their opposition to the assignment of the option to purchase a fee simple interest in the 35th Street premises, this court can only conclude that such conduct must have been motivated by a bad faith desire to strip the Trustee of his interest in the property for inadequate consideration.

## DISPOSITION

For the reasons set forth above, this court finds that the Trustee is entitled to summary judgment on his adversary complaint no. 287–0133 as a matter of law. It is, therefore, this court's intention to grant the above-entitled motion and order the relief requested in the adversary complaint.

5. In response to an interrogatory to indentify any party to whom the Janaks would permit an assignment of the option and to detail the reasons for such permission, the Janaks answered that the question was "irrelevant". (Ex. "M–8" to Supplemental Declaration of Elmer Malakoff, Filed 10/31/88, at p. 4 ("Response to Interrogatory #3"). In response to an interrogatory which specifically queried as to the potential prejudice Janak would sustain were an assignment to be made to Malakoff (the holder of the 15% interest in the option), Janak's counsel responded that "Throughout this case, [Janak] has consistently taken the position that the option agreement was personal to JAMES E. MOORE because it was the negotiated culmination of litigation between MOORE and the other defendants in this Adversary Proceeding." (Ex. "M–8", supra, at p. 3 ("Response to Interrogatory 'A' ")). This response obviously begs the question, but is the closest that the Janaks have come to answering this pivotal question to date.

In addition, this court finds that as the "prevailing part[ies]" under Paragraph 12 of the option agreement [6], the Trustee (as holder of an 85% interest) and Elmer Malakoff (as holder of a 15% interest) are entitled to any reasonable fees and costs incurred by them in instituting, and supporting their respective positions in the above-entitled adversary complaint. (California Civil Code § 1717(a) [7]; *In re Sonoma V*, 23 B.R. 789, 796 (9th Cir.B.A.P.1982) (State law governs bankruptcy court's determination as to whether litigant is contractually entitled to attorney's fees)). The reasonableness of those fees and costs will be determined by this court upon proper application by the parties.

The Trustee will prepare and submit a proposed judgment in accordance with the above memorandum of decision.

---

**6.** 12. *Attorneys' Fees.* In the event of any controversy, claim or dispute between the parties hereto, arising out of or relating to this Agreement or the breach thereof, the prevailing party shall be entitled to recover from the losing party reasonable expenses, attorneys' fees, and costs. (Option Agreement, supra, at ¶ 12).

**7.** Civil Code § 1717(a) provides as follows:

(a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.