**In re VYLENE ENTERPRISES, INC., Debtor.**

**VYLENE ENTERPRISES, INC., Plaintiff–Appellant,**

v.

**NAUGLES, INC., Defendant–Appellee.**

No. 94–56470.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 8, 1996.

Submission Vacated April 3, 1996.

Resubmitted May 1, 1996.

Decided July 29, 1996.

As Amended on Denial of Rehearing and Rehearing En Banc Sept. 12, 1996.*

* Judges Pregerson, T.G. Nelson and Ezra have voted to deny appellee's petition for rehearing. Judges Pregerson and T.G. Nelson vote to reject the suggestion for rehearing en banc and Judge Ezra so recommends.

Phillip K. Fife, Seal Beach, California, for plaintiff-appellant.

William T. Rintala and Ann K. Penners, Rintala, Smoot, Jaenicke & Brunswick, Los Angeles, California, for defendant-appellee.

Before: PREGERSON and T.G. NELSON, Circuit Judges, and EZRA,** District Judge.

T.G. NELSON, Circuit Judge:

## OVERVIEW

Chapter 7 debtor Vylene Enterprise, Inc., the operator of a restaurant under a franchise granted by defendant Naugles, Inc., appeals the district court's order declining to adopt the bankruptcy court's proposed findings of fact and conclusions of law.

We have jurisdiction under 28 U.S.C. § 1291. For the reasons stated herein, we vacate the district court's order and reinstate

** Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by desig-

the bankruptcy court's findings of fact, conclusions of law, and judgment.

## FACTS AND PROCEDURAL HISTORY

In 1975, Vylene, the franchisee, and Naugles, the franchisor, entered into a ten-year franchise agreement which authorized Vylene to take over the operation of an existing Naugles restaurant located in Long Beach, California. Under the terms of the franchise agreement, Vylene was granted the option to extend the franchise upon the expiration of the initial ten-year term, for an additional eight years, "on terms and conditions to be negotiated."

In 1983, Vylene became increasingly delinquent in paying its franchise fees and rent. Shortly thereafter, Vylene filed a voluntary Chapter 11 proceeding in bankruptcy court. In July 1985, the bankruptcy court approved a stipulation which, among other things, authorized Vylene to assume the franchise agreement upon payment to Naugles of $38,121 representing unpaid pre-petition rent and royalties, less unpaid rebates. In August 1985, Naugles filed a creditor's claim against Vylene's estate.

Also in August 1985, Vylene paid the pre-petition arrearages under the Order and Stipulation, and assumed the remainder of the franchise through December 31, 1985, as a debtor in possession. With regard to Vylene's right to renew the franchise contract, paragraph three of the order provided that the "issue of the franchisee's right to extend the franchise for an additional eight (8) year period is reserved for decision if and when the Debtor gives the Creditor Naugles, Inc. the required notice as per the Franchise Agreement."

In October 1985, approximately two months prior to the end of the ten-year term of the franchise agreement, Vylene notified Naugles of its desire to extend the franchise. Naugles mailed to Vylene its offer to extend the franchise. Vylene's attorney rejected the offer arguing that Naugles' proposal was "so

nation.

obviously onerous that no one could operate the business except at a loss."

On November 23, 1985, Naugles opened a new company-owned restaurant approximately 1.4 miles from Vylene's location. The new restaurant offered a new menu which differed from the menu offered at Vylene's restaurant in that it offered smaller portions at a lower price. The new restaurant also gave out coupons which were redeemable at participating Naugles restaurants. Vylene did not participate in the coupon program. It is undisputed that the new restaurant had a negative impact on Vylene's sales.

On December 30, 1985, one day prior to the expiration date of the franchise agreement, Vylene filed an adversary proceeding against Naugles in bankruptcy court asserting claims for relief based on Naugles' alleged refusal to negotiate for an extension of the franchise agreement and other alleged misconduct concerning the performance of the agreement. Naugles' answer to the complaint alleged that the proceeding was a non-core proceeding and stated that it did not consent to the jurisdiction of the bankruptcy court. Naugles also filed counterclaims for trademark violations, unfair competition, misappropriation of trade secrets, and for possession of the real property held by Vylene under sublease from Naugles. Naugles then moved for a preliminary injunction to prevent Vylene from continuing to use Naugles' federally registered trademarks. While the motion for injunction was under submission, Naugles moved for relief from the automatic stay in order to pursue repossession of the franchise.

The bankruptcy judge held that Naugles' counterclaims and motion for preliminary injunction concerned the continued use of property by the debtor, and thus the case was a core proceeding within the literal language of 28 U.S.C. § 157(b)(2)(M). In ruling on the merits of Naugles' motion for preliminary injunction, the bankruptcy judge found that the failure of the parties to negotiate in good faith for a renewal of the franchise agreement resulted in the failure of a condition precedent to the expiration of the agreement. Thus, the bankruptcy judge held that the franchise agreement was still in effect and Vylene's continued use of the trademark was proper.

Naugles appealed the bankruptcy court's denial of its motions for preliminary injunction and for relief from the stay. The district court reversed, holding that the bankruptcy judge had misinterpreted the right of first refusal clause in the franchise agreement and that Vylene had no right to renew under the agreement. *In re Vylene Enterprises, Inc.,* CV 86–72881 JSL, Order Reversing and Remanding to Bankruptcy Court (C.D. Cal. June 25, 1987), *appeal dismissed sub nom., Naugles Inc. v. Vylene Enterprises, Inc.,* 891 F.2d 295 (9th Cir.1989). Vylene appealed the district court's order to this court. The appeal, however, was dismissed as moot, and the bankruptcy court order denying a preliminary injunction and the district court order reversing and remanding were vacated. The appeal became moot because the bankruptcy court had granted Naugles' renewed motion for relief from the automatic stay and allowed Naugles to take possession of the franchise premises due to Vylene's failure to pay franchise fees and rent pursuant to the court's provisional order. Further, Vylene's Chapter 11 proceeding had been converted into a Chapter 7 case based on Vylene's failure to comply with the financial reporting requirements imposed upon a debtor in possession.

However, because neither appellate decision addressed the bankruptcy court's finding that the adversary proceeding was a core proceeding, the bankruptcy court held a trial in three phases over a period of nearly three years concerning Vylene's claims for breach of the franchise agreement and for breach of the implied covenant of good faith and fair dealing. The bankruptcy court found that Naugles breached the franchise agreement and the covenant of good faith and fair dealing by opening a competing franchise within the immediate vicinity of the Vylene franchise and by refusing to negotiate in good faith for a renewal. The bankruptcy judge held that Vylene had suffered damages in the amount of $2,219,468 and awarded attorneys' fees and costs of $550,000 to Vylene.

On appeal, the district court held that the bankruptcy court erred in determining that

the action was a core proceeding and vacated and remanded to the bankruptcy court for the preparation of proposed findings of fact and conclusions of law. On April 22, 1993, the bankruptcy court issued an order adopting its earlier Memoranda as proposed findings of fact and conclusions of law. Naugles filed objections to the proposed findings and conclusions. On August 25, 1994, the district court declined to adopt the proposed findings and conclusions and entered judgment in favor of Naugles. Vylene filed a timely notice of appeal.

## DISCUSSION

*Core v. Non-core Proceeding*

Title 28 of the U.S.C., § 157(b)(1) states: "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 ... and may enter appropriate orders and judgments, subject to review under section 158 of this title." Section 157(b)(2) sets forth a nonexclusive list of proceedings Congress deemed to be core proceedings:

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11....

(C) counterclaims by the estate against persons filing claims against the estate;

(D) order in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) order approving the use or lease of property, including the use of cash collateral;

(N) order approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

Additionally, under § 157, if a proceeding is not a core proceeding, but is related to a case under title 11, the bankruptcy judge may hear the case, as an adjunct of the district court, and submit proposed findings of fact and conclusions of law to the district court, with any final order or judgment to be entered by the district court after a *de novo* review of any matter to which a party has properly objected. 28 U.S.C. § 157(c)(1).

The distinction between "core" and "related" proceedings is significant in that it affects the standard of review to be applied by the district court. In this case, the district judge held that Vylene's adversary proceeding was not a core proceeding under 28 U.S.C. § 157(b). Thus, reviewing the bankruptcy court's proposed findings of fact and conclusions of law *de novo*, the district judge declined to adopt them.

Vylene contends that the district judge erred in rejecting the conclusion of the bankruptcy court that the dispute was a "core" proceeding. According to Vylene, the district court's review of the bankruptcy court's factual determination should have been done under the "clearly erroneous" standard of review.

█ Because the issue here is whether the bankruptcy court had jurisdiction to enter a final judgment on the adversary proceedings, we conduct a *de novo* review. *In re Castlerock Prop.*, 781 F.2d 159, 161 (9th Cir.1986).

█ A bankruptcy court lacks jurisdiction "to make final determinations in matters that could have been brought in a district

court or a state court." *In re Thomas*, 765 F.2d 926, 929 (9th Cir.1985). Nevertheless, § 157(b)(2)(M) specifically provides that "orders approving the use or lease of property, including the use of cash collateral," are core proceedings.

Title 11 U.S.C. § 541(a)(1) defines property of the estate as follows: "[A]ll legal or equitable interest of the debtor in property as of commencement of the case." The franchise agreement and the rights conferred therein are clearly assets of the bankruptcy estate. *See In re Tudor Motor Assoc.*, 102 B.R. 936, 948 (D.N.J.1989) (holding that the "franchisee's contractual rights in a Franchise Agreement are generally considered property of the estate, except where said agreements have been effectively terminated prior to a debtor's filing."); *cf. Steffan v. Malakoff*, 99 B.R. 27, 29 (E.D.Cal.1989) (stating that debtor's pre-petition option contract is property of the estate as contemplated in 11 U.S.C. § 541(a)(1)).

Therefore, we hold that the bankruptcy court's determination that the adversary proceedings were "core" proceedings was correct. The bankruptcy court had jurisdiction to enter final judgment on the matters before it, subject to appellate review in the district court.

*Estoppel*

■ The district court ruled that Naugles was not estopped from asserting that the option to renew provision of the franchise agreement was too indefinite to impose any enforceable legal obligation on the parties to renew the franchise agreement. The district court relied on the fact that the option to renew provision in the franchise agreement left the central terms of the renewal for future determination by the parties. The franchise agreement provided that Vylene had, upon giving sixty days advance notice in writing to Naugles, a right of first refusal to extend the franchise at the termination of the franchise agreement "on terms and conditions to be negotiated within said sixty (60) days."

■ Vylene argues that when it paid Naugles the $38,121, it was the intention of the parties that the renewal provision would be enforceable. Vylene maintains that to allow Naugles to accept the $38,121 in October,

and then to allow Naugles to take the position in December that the renewal provision was unenforceable would be absurd.

The general rule regarding contracts to agree in the future is stated to be as follows: "although a promise may be sufficiently definite when it contains an option given to the promisor or promisee, yet if an essential element is reserved for the future agreement of both parties, the promise can give rise to no legal obligation until such future agreement. Since either party by the terms of the promise may refuse to agree to anything to which the other party will agree, it is impossible for the law to affix any obligation to such a promise." *Ablett v. Clauson*, 43 Cal.2d 280, 272 P.2d 753, 756 (1954), *quoting*, 1 Williston, On Contracts (Rev. Ed.1936) 131, § 45. The *Ablett* court went on to state that "an option agreement which leaves an essential term to future agreement is not enforceable." *Id.* *See Okun v. Morton*, 203 Cal.App.3d 805, 250 Cal.Rptr. 220 (1988) (acknowledging that the defense of uncertainty has validity if the uncertainty or incompleteness of the contract prevents the court from ascertaining what to enforce).

In this case, the renewal clause did not establish any essential factors to an extended franchise agreement other than the fact that the extension, if agreed upon, would have been for a duration of eight years. The terms of the renewal clause were too vague to establish an enforceable *right to renew.*

However, Vylene's payment of the $38,121 in August cured its default, and gave Vylene the right to assume the franchise agreement until the contract expired in December 1995. The franchise agreement clearly stated that the franchisee had the right, upon giving timely notice, to extend the franchise agreement "on terms and conditions to be negotiated within said sixty (60) days." Thus, although the terms of the renewal provision did not give Vylene a guaranteed right to renew on a determinable basis, the provision obligated Naugles to negotiate in good faith concerning the terms and conditions of a renewal. *See Dayton Time Lock Service, Inc. v. Silent Watchman Corp.*, 52 Cal. App.3d 1, 124 Cal.Rptr. 678 (1975) (holding

that the implied covenant of good faith and fair dealing applies with equal vigor to franchise agreements).

The bankruptcy court held an evidentiary hearing and found that Naugles failed to conduct good faith negotiations concerning the renewal of the 1975 franchise agreement. After Vylene notified Naugles of its intent to renew, Naugles offered Vylene a new, different franchise agreement. The bankruptcy court held that Naugles' offer of a new and different franchise agreement did not discharge Naugles' obligation to bargain in good faith on the terms and conditions of a renewal or extension of the existing franchise. Moreover, the court found that the proposed new franchise agreement was commercially unreasonable and that Naugles knew or should have known Vylene would reject it. The proposed new franchise agreement was the same agreement Naugles presented to Vylene in 1983, which Vylene rejected because it found the terms to be commercially unreasonable. Thus, the bankruptcy court found that Naugles breached its contract with Vylene in failing to negotiate in good faith concerning the extension or renewal of the Vylene franchise for an additional eight-year term.

The bankruptcy court's findings of fact are supported by the record.

*Marketing Territory*

■ It is undisputed that neither the bankruptcy court nor the district court found that Vylene had exclusive territory under the franchise agreement. In *Eichman v. Fotomat Corp.*, 880 F.2d 149, 164 (9th Cir.1989), we held, "[W]here there is no express grant of an exclusive territory in a contract or franchise agreement, none will be impliedly read into the contract." Notwithstanding, under California law, all contracts have an implied covenant of good faith and fair dealing. *Harm v. Frasher*, 181 Cal.App.2d 405, 417, 5 Cal.Rptr. 367 (1960).

■ In this case, the bankruptcy court determined that Naugles breached the covenant of good faith and fair dealing by constructing a competing restaurant within a mile and a half from Vylene's restaurant. In *Scheck v. Burger King Corp.*, 756 F.Supp. 543 (S.D.Fla.1991), the court held, on facts similar to those present in this case, that the franchisee, *although not entitled to an exclusive territory*, was still entitled to expect that the franchisor would "not act to destroy the right of the franchisee to enjoy the fruits of the contract." *Id.* at 549.

We agree. Vylene did not have any rights to exclusive territory under the terms of the franchise agreement, and we do not impliedly read any such rights into the contract. However, Naugles' construction of a competing restaurant within a mile and a half of Vylene's restaurant was a breach of the covenant of good faith and fair dealing. The bad faith character of the move becomes clear when one considers that building the competing restaurant had the potential to not only hurt Vylene, but also to reduce Naugles' royalties from Vylene's operations.

## CONCLUSION

For the reasons stated above, we vacate the district court's order and remand. Since the district court did not reach several other issues raised by the parties, the district court is instructed to consider any remaining relevant issues, and enter an appropriate order or orders following such hearings as it deems necessary. Unless a different result is required by the district court's decision on the remaining issues, the district court shall reinstate the bankruptcy court's findings of fact, conclusions of law and judgment.

VACATED and REMANDED with instructions.