# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

KIRCHER v BOYNE USA, INC

Docket No. 166459. Argued on application for leave to appeal December 4, 2024. Decided March 27, 2025.

Kathryn L. Kircher brought an action in the Emmet Circuit Court against Boyne USA, Inc., Stephen Kircher, and others not involved in this appeal, claiming in part that defendants breached a 2014 settlement agreement that the parties had reached after defendants fired plaintiff from their family business in 2012. The 2014 agreement provided that plaintiff would drop her claims against defendants in exchange for the right to redeem stock shares in Boyne USA at a redemption price calculated by a formula that was based in part on the amount of Boyne USA's debt. A second settlement agreement, executed in April 2019, supplemented the first agreement and settled a different lawsuit between plaintiff and defendants. Under that settlement agreement, the parties agreed to specific redemption prices for years 2015 through 2018 as calculated by the formula from the May 2014 settlement agreement, but the redemption price for plaintiff's 2019 shares was listed as "to be determined" because it hinged on Boyne USA's 2018 financial statements, which defendants stated had yet to be completed when the parties perfected the April 2019 settlement agreement. Because of this uncertainty, the parties agreed that the value of plaintiff's 2019 shares would again be determined using the formula from the 2014 settlement agreement. In 2018, Boyne USA borrowed approximately $300 million to purchase resort properties and other assets, which reduced plaintiff's 2019 redemption price to a negative number under the formula. Upon discovering the negative redemption price, plaintiff sued defendants for breach of contract, alleging that defendants had breached the 2014 settlement agreement and acted in bad faith by refusing to use an alternative method to calculate the redemption price. Defendants moved for summary disposition under MCR 2.116(C)(8), and the trial court, Roy C. Hayes III, J., denied the motion, ruling that there were questions of fact regarding whether plaintiff could succeed on a theory that defendants had breached the implied covenant of good faith and fair dealing. Defendants applied for leave to appeal. After granting the application, the Court of Appeals, RICK, P.J., and SHAPIRO and YATES, JJ., affirmed, holding that plaintiff stated a cognizable breach-of-contract claim as to defendants' alleged bad faith in declining to use a different redemption-price formula, given that the settlement agreement allowed the parties to depart from the formula if they agreed to do so. ___ Mich App ___ (November 2, 2023) (Docket No. 360821). Defendants sought leave to appeal in the Supreme Court, which scheduled and heard oral argument on the application regarding (1) whether the implied covenant of good faith and fair dealing applies only as an interpretive tool to understand the express terms of a contract, (2) whether plaintiff stated a valid claim for breach of contract based on the defendants' entering into a transaction that significantly

added to the debt of Boyne USA, and (3) whether plaintiff stated a valid claim for breach of contract based on the defendants' refusal to negotiate an alternative formula to calculate the redemption price of the plaintiff's shares. 513 Mich 1054 (2024).

In a unanimous per curiam opinion, the Supreme Court, in lieu of granting leave to appeal, *held*:

The Court of Appeals erred by holding that plaintiff stated a valid claim for breach of contract based on defendants' refusal to negotiate an alternative formula to calculate the redemption price of plaintiff's shares. Under existing precedent, the implied covenant of good faith and fair dealing does not give rise to an independent cause of action, and it does not override or replace any express contractual term. To the extent the Court of Appeals held otherwise, its judgment was reversed.

1. In this case, the Court of Appeals relied on the implied covenant of good faith and fair dealing, which has been described as a promise that neither party will do anything that will have the effect of destroying or injuring the other party's right to receive the fruits of the contract. The Court of Appeals had previously held, however, that there is no independent cause of action for breach of the implied covenant of good faith and fair dealing, instead viewing this implied covenant as an interpretive tool with which to evaluate contractual obligations or other statutory duties. Under existing law, the implied covenant of good faith and fair dealing neither overrides nor replaces any express contractual term.

2. Applying the principles previously established regarding the implied covenant of good faith and fair dealing to the present case foreclosed plaintiff's breach-of-contract claim. At the outset, no party made calculating the redemption price of plaintiff's shares a matter of its own discretion; instead, the parties agreed to use a negotiated formula that unambiguously tied plaintiff's redemption price to Boyne USA's earnings and debt, and that agreed-upon formula governed the "to be determined" redemption price of plaintiff's 2019 stock shares. Because the parties unmistakably expressed their respective rights regarding redemption-price calculation, the Court of Appeals erred by holding that defendants were contractually obligated to use a different formula under the implied covenant of good faith and fair dealing. The phrase "unless otherwise agreed by the Parties" in the 2014 settlement agreement did not change this conclusion. Instead, this phrase merely permitted the parties to amend the contract at a future date, reflecting the bedrock principle that parties to a contract always have the ability to mutually modify their existing agreements after the original contract has been executed. If parties to a contract forgo such a modification opportunity, the terms of the existing contract govern. The Court of Appeals' holding effectively transformed the implied covenant of good faith and fair dealing into an independent cause of action that may be asserted in the absence of an underlying contractual duty or obligation. Because this surpassed the scope of the implied covenant as laid out in Court of Appeals precedent, the panel erred by holding that plaintiff stated a valid claim for breach of contract on that basis.

Court of Appeals judgment reversed in part, leave to appeal denied in part, and case remanded to the Emmet Circuit Court for further proceedings.

Justice THOMAS did not participate because the Court considered this case before she assumed office.

# OPINION

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas

FILED March 27, 2025

S T A T E   O F   M I C H I G A N

SUPREME COURT

KATHRYN L. KIRCHER,

      Plaintiff-Appellee,

v                                                       No. 166459

BOYNE USA, INC., and STEPHEN
KIRCHER,

      Defendants-Appellants,
and

JOHN E. KIRCHER and AMY KIRCHER
WRIGHT,

      Defendants.

BEFORE THE ENTIRE BENCH (except THOMAS, J.)

PER CURIAM.

In this case, plaintiff and defendants agreed to use a formula to calculate the redemption price of plaintiff's stock shares in defendant Boyne USA, Inc. After that

formula produced a negative redemption price, plaintiff sued defendants, alleging that defendants refused to use an alternative formula in breach of the parties' contract. The narrow issue before this Court is whether the implied covenant of good faith and fair dealing can sustain plaintiff's claim. We hold that it cannot. Therefore, we reverse the Court of Appeals' decision to the contrary.

## I. FACTS AND PROCEDURAL HISTORY

This case arises out of a long-running dispute between feuding family members. At all relevant times, plaintiff, Kathryn Kircher, was a shareholder of defendant Boyne USA, Inc., a ski business based in Emmet County. Everett Kircher, plaintiff's late father, founded Boyne USA in 1947, and it has remained in the Kircher family ever since. Plaintiff's brother, defendant Stephen Kircher, is currently the majority shareholder and CEO of Boyne USA, and other family members remain involved in various capacities.

Plaintiff also worked at Boyne USA for many years. But around 2010, plaintiff's relationship with her siblings soured. And in 2012, she was terminated from Boyne USA. Several lawsuits followed. Relevant here are the settlement agreements resulting from those lawsuits—one executed in 2014, and another executed in 2019.

The first settlement agreement, executed in May 2014, provided that plaintiff would drop her claims against defendants in exchange for the right to redeem stock shares in Boyne USA. In relevant part, ¶ 2(b) of the 2014 settlement agreement provided the following:

> Beginning in 2014 and through 2017, Plaintiff may redeem additional shares in each year, not to exceed $250,000 in value as determined in accordance with Paragraph 2(c) of this Agreement, unless otherwise agreed by the Parties. Beginning in 2018 and each year thereafter, Plaintiff may redeem Plaintiff's shares not to exceed $150,000 in value as determined in

accordance with Paragraph 2(c) unless otherwise agreed by the Parties and until such time as Plaintiff has redeemed all of her shares.

As indicated in this provision, ¶ 2(c) of the May 2014 settlement agreement established the formula for calculating the redemption price of plaintiff's stock shares in Boyne USA. That formula set forth the following calculation method:

> [(6.5 times an Average of EBITDA[1]) minus the Total Company Debt[2]] multiplied by 80% and then divided by the total number of outstanding shares to obtain a per share price. [Brackets in original.]

Therefore, the formula was variable and based the redemption price in part on Boyne USA's debt.

The second settlement agreement, executed in April 2019, supplemented the first agreement and settled a different lawsuit between plaintiff and defendants. The April 2019 settlement agreement also addressed the redemption price for plaintiff's shares in Boyne USA. Under that settlement agreement, the parties agreed to specific redemption prices for years 2015 through 2018, as calculated by the formula from the May 2014 settlement agreement. But the redemption price for plaintiff's 2019 shares was listed as "TBD," meaning "to be determined":

---

[1] The May 2014 settlement agreement defined "EBITDA" as "earnings before interests, taxes, depreciation and amortization," excluding "non-recurring and extraordinary items such as large real estate transactions."

[2] "Total Company Debt" included Boyne USA's senior and subordinated debt "based on the immediately preceding calendar year-end financial statements" but excluded several other expenses incurred by Boyne USA.

| Year | Amount | Strike Price | |
|---|---|---|---|
| 2015 | $250,000 | $360.23 | (12/31/2014 financials) |
| 2016 | $250,000 | $324 | (12/31/2015 financials) |
| 2017 | $250,000 | $401.81 | (12/31/2016 financials) |
| 2018 | $150,000 | $773 | (12/31/2017 financials) |
| 2019 | $150,000 | TBD | (12/31/2018 financials)[1] |
| Total | $1,050,000 | | |

The 2019 redemption price was listed as "TBD" because it hinged on Boyne USA's 2018 financial statements, which defendants stated had yet to be completed at the time the parties perfected the April 2019 settlement agreement. Because of this uncertainty, the parties agreed that the value of plaintiff's 2019 shares would again be "calculated pursuant to the Settlement Agreement executed on May 7, 2014, in the same manner and form as the previous years." In other words, the redemption price for plaintiff's 2019 shares would be determined based on the same formula from the 2014 settlement agreement that incorporated Boyne USA's earnings and debt.

Under the agreed-upon formula, Boyne USA's debt significantly affected plaintiff's 2019 redemption price. Indeed, in 2018, Boyne USA borrowed approximately $300 million to purchase resort properties and other assets that it was leasing. As a result, this transaction reduced plaintiff's 2019 redemption price to a negative number under the formula.[3]

---

[3] The record suggests that plaintiff learned of this transaction before she entered into the 2019 supplemental settlement agreement. First, during a trial-court hearing, plaintiff's counsel stated that "the transaction happened in March, *we found out about it in May of '18*, but it's not really significant. We find out about this and we wanna redeem our shares."

Upon discovering the negative redemption price, plaintiff sued defendants for breach of contract. Relevant here, plaintiff alleged that defendants breached the 2014 settlement agreement by refusing to "utilize an alternative method" to calculate the redemption price after the agreed-upon formula produced a negative redemption price. This, according to plaintiff, amounted to bad-faith conduct on defendants' part.[4] Defendants moved for summary disposition under MCR 2.116(C)(8), but the trial court denied the motion in relevant part. The trial court reasoned that questions of fact lingered on whether the implied covenant of good faith and fair dealing could sustain plaintiff's breach-of-contract claim. The trial court thus allowed plaintiff's breach-of-contract claim to proceed on that basis.

Defendants appealed, and the Court of Appeals affirmed. *Kircher v Boyne USA, Inc*, ___ Mich App ___, ___; ___ NW3d ___ (November 2, 2023) (Docket No. 360821). In so doing, the Court of Appeals relied on the implied covenant of good faith and fair dealing to hold that plaintiff sufficiently stated a breach-of-contract claim "on the basis of defendants' alleged bad-faith decision to not utilize a different formula to calculate her

---

(Emphasis added.) Second, plaintiff at her deposition testified that she learned of the transaction before the parties executed the April 2019 settlement agreement.

[4] Plaintiff also alleges that defendants breached the 2014 settlement agreement by entering into the 2018 transaction that increased Boyne USA's debt. The trial court allowed plaintiff's breach-of-contract claim to proceed on this basis. But the Court of Appeals disagreed, concluding that plaintiff failed to state a breach-of-contract claim as to debt acquisition because the 2014 settlement agreement lacked "any specifications or restrictions" on Boyne USA's ability to indebt itself. *Kircher*, ___ Mich App at ___; slip op at 5 n 7. Although we ordered briefing on this issue, we decline to disturb the Court of Appeals' conclusion because we are not persuaded that it should be reviewed by this Court.

5

redemption price." *Id*. at 5. To the Court of Appeals, the phrase "unless otherwise agreed by the Parties" in the 2014 settlement agreement vested discretion in the parties to alter the formula if needed, thus opening the door to the implied covenant of good faith and fair dealing. *Id*. And in the Court of Appeals' view, plaintiff sufficiently alleged that defendants acted in bad faith by failing to "consider" a different formula. *Id*. Thus, the Court of Appeals held that plaintiff stated a cognizable breach-of-contract claim as to defendants' alleged bad faith in declining to use a different redemption-price formula. *Id*.

Defendants sought leave to appeal in this Court. We scheduled and heard oral argument on the application regarding the following issues:

> (1) whether the implied covenant of good faith and fair dealing applies only as an interpretive tool to understand the express terms of a contract, compare *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 133-134 (2013), with *In re Vylene Enterprises, Inc*, 90 F3d 1472, 1477 (CA 9, 1996); (2) whether the plaintiff stated a valid claim for breach of contract based on the defendants entering into the 2018 real estate transaction that significantly added to the debt of defendant Boyne USA, Inc.; and (3) whether the plaintiff stated a valid claim for breach of contract based on the defendants' refusal to negotiate an alternative formula to calculate the redemption price of the plaintiff's shares. [*Kircher v Boyne USA, Inc*, 513 Mich 1054, 1054 (2024).]

## II. STANDARD OF REVIEW

We review de novo denials of motions for summary disposition under MCR 2.116(C)(8). *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013). MCR 2.116(C)(8) entitles the moving party to summary disposition when the "opposing party has failed to state a claim on which relief can be granted." Consequently, the "motion must be granted if no factual development could justify the plaintiff's claim for relief." *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998).

6

III. ANALYSIS

We hold that the Court of Appeals erred by concluding that plaintiff stated a valid claim for breach of contract based on defendants' refusal to negotiate an alternative formula to calculate the redemption price of plaintiff's shares. As noted earlier, the Court of Appeals relied on the implied covenant of good faith and fair dealing in reaching its conclusion. The implied covenant of good faith and fair dealing has been broadly described as a promise "that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Hammond v United of Oakland, Inc*, 193 Mich App 146, 152; 483 NW2d 652 (1992) (quotation marks and citation omitted).

Despite this broad definition, the Court of Appeals has set forth several principles that cabin the covenant's reach. For starters, the Court of Appeals has held that there is no independent cause of action for breach of the implied covenant of good faith and fair dealing. See, e.g., *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 476; 666 NW2d 271 (2003). The Court of Appeals has instead viewed this implied covenant as an interpretive tool "by which contractual obligations or other statutory duties are to be measured and judged." *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 133; 839 NW2d 223 (2013). These principles track the Court of Appeals' longstanding holding that "[w]here a party to a contract makes the manner of its performance a matter *of its own discretion*, the law does not hesitate to imply the proviso that such discretion be exercised honestly and in good faith." *Burkhardt v City Nat'l Bank of Detroit*, 57 Mich App 649, 652; 226 NW2d 678 (1975) (emphasis added). Naturally, then, the implied covenant of good faith and fair dealing under existing law "neither overrides nor replaces any express

7

contractual term." *Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 501; 892 NW2d 467 (2016) (quotation marks and citation omitted).[5]

Applying these principles to the present case forecloses plaintiff's breach-of-contract claim. At the outset, no party made calculating the redemption price of plaintiff's shares a matter of its own discretion. See *Burkhardt*, 57 Mich App at 652. To the contrary, the parties agreed to use a negotiated formula that unambiguously tied plaintiff's redemption price to Boyne USA's EBITDA and debt. And that agreed-upon formula governed the "TBD" redemption price of plaintiff's 2019 stock shares. Because the parties "unmistakably expressed their respective rights" regarding redemption-price calculation, *Hubbard Chevrolet Co v Gen Motors Corp*, 873 F2d 873, 877 (CA 5, 1989) (quotation marks and citation omitted), the Court of Appeals erred by holding that defendants were contractually obligated to use a *different* formula under the implied covenant of good faith and fair dealing.

The phrase "unless otherwise agreed by the Parties" in the 2014 settlement agreement does not change our conclusion. The Court of Appeals reasoned that this phrase introduced an implied duty to negotiate a new formula, such that it created the "type of discretionary authority on which a breach-of-contract action may be based." *Kircher*, ___ Mich App at ___; slip op at 5. Although parties to a contract always enjoy the ability to mutually modify their existing agreements, the language "unless otherwise agreed by the

---

[5] Because the parties agree with the legal principles espoused by the Court of Appeals, we need not define the contours of the implied covenant of good faith and fair dealing under Michigan law.

8

Parties" created no requirement to do so. Rather, "unless otherwise agreed by the Parties" merely permitted the parties to amend the contract at a future date, reflecting the bedrock principle that "parties possess, and never cease to possess, the freedom to contract even after the original contract has been executed." *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 372; 666 NW2d 251 (2003). And where, as here, parties to a contract forgo such a modification opportunity, the terms of the existing contract govern.

In sum, the parties here agreed to an unambiguous formula to calculate the plaintiff's redemption price. And the phrase "unless otherwise agreed by the Parties" created no discretionary duty or obligation to depart from this agreed-upon formula. The Court of Appeals' holding to the contrary effectively transformed the implied covenant of good faith and fair dealing into an independent cause of action that may be asserted in the absence of an underlying contractual duty or obligation. Because this surpasses the scope of the implied covenant as laid out in Court of Appeals precedent, the panel erred by holding that plaintiff stated a valid claim for breach of contract on that basis. See, e.g., *Belle Isle Grill Corp*, 256 Mich App at 476; *Burkhardt*, 57 Mich App at 652; *Gorman*, 302 Mich App at 133-134.

## IV. CONCLUSION

At bottom, the Court of Appeals erred by holding that plaintiff stated a valid claim for breach of contract based on defendants' refusal to negotiate an alternative formula to calculate the redemption price of plaintiff's shares. We therefore reverse that part of the Court of Appeals' judgment and remand this case to the Emmet Circuit Court for further

proceedings not inconsistent with this opinion. In all other respects, leave to appeal is denied, because we are not persuaded that the remaining questions presented should be reviewed by this Court.

> Elizabeth T. Clement
> Brian K. Zahra
> Richard H. Bernstein
> Megan K. Cavanagh
> Elizabeth M. Welch
> Kyra H. Bolden

THOMAS, J., did not participate because the Court considered this case before she assumed office.