Filed 7/25/14  Glendale Steakhouse v. Superior Court CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

|  |  |
|---|---|
| GLENDALE STEAKHOUSE, L.P., | B253644 |
| Petitioner, | (Los Angeles County Super. Ct. No. BC525561) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| CETTG GLENDALE LLC, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDING; petition for writ of mandate.  Kevin C. Brazile, Judge.  Petition granted.

McKenna Long & Aldridge, Charles A. Bird and Mark Hagarty for Petitioner.

No appearance for Respondent.

Fulbright & Jaworski and Todd M. Sorrell for Real Party in Interest.

_____

Glendale Steakhouse, L.P. (Steakhouse) challenges an order denying its motion to quash service of an unlawful detainer summons and complaint filed against it by landlord CETTG Glendale LLC (CETTG), owner of the shopping center where Steakhouse's restaurant is located. Steakhouse claims that CETTG's notice to pay rent or quit, which includes rent deferred by agreement with the previous owners of the shopping center and due more than one year prior to the service of the notice, is void under Code of Civil Procedure section 1161. We agree. Because the notice to pay rent or quit expressly seeks the sum of $137,000, where only $20,000 of that amount was due less than one year prior to the service of the notice, the unlawful detainer complaint, based on that notice, constitutes an inadequate pleading and cannot stand. Accordingly, we hereby grant the petition, mandating respondent court to vacate its order denying the motion to quash service of the summons and complaint in the unlawful detainer action.[1]

## BACKGROUND

On November 15, 2006, Steakhouse, a franchisee of Outback Steakhouse of Florida, entered into a lease agreement with Eagle Glendale Marketplace, L.P., and AK Glendale, LLC (collectively Glendale Marketplace), the then-owners of a Glendale shopping center, with Steakhouse to pay rent on a gradually-escalating level (Monthly Rent). For the first five years, rent was set at $10,000, for each month.[2] For the next five

---

[1] We agree with the parties that Steakhouse's use of a motion to quash service of summons and complaint was proper, because Steakhouse's challenge to the complaint is that it failed to state a cause of action for unlawful detainer, as it seeks rent due more than one year before the notice was served. (*Delta Imports, Inc v. Municipal Court* (1983) 146 Cal.App.3d 1033, 1036.)

[2] In pertinent part, the original lease sets forth provisions regarding rent, default, remedies and waivers. Section 3.04, entitled, "Rent—Generally," provides: "Every payment required to be made by Tenant pursuant to this Lease shall be rent due Landlord hereunder, whether or not designated as Monthly Minimum Rent or as additional rent, and Tenant's failure to pay such additional rent to Landlord when due shall entitle Landlord to exercise all rights and remedies provided in Article XIV [Defaults]."

Section 14.01, entitled "Defaults," provides in subdivision B: "Notice; Right to Cure. Tenant shall only be deemed in default of this Lease upon the continued

2

years, Steakhouse was to pay rent of $10,750 per month. The parties anticipated a 30-year lease and set forth options for rates through Year 30. Steakhouse and Glendale Marketplace amended the lease in 2007, postponing the payment of rent until the City of Glendale issued the required permits. On April 28, 2008, Steakhouse opened the restaurant—which continues in operation today. The record is silent as to when, if ever, Steakhouse paid rent in 2008 and 2009.

On December 1, 2009, Steakhouse and Glendale Marketplace executed a second amendment to the lease, allowing Steakhouse to defer rent payments until May 31, 2010. (Deferred Rent).

The Second Amendment to Shopping Center Lease (2009 Amendment) provides in part:

---

occurrence of (i) Tenant's failure to pay rent or any other monetary sum within ten (10) days after written notice from Landlord to Tenant that such sums are due, . . . The notice required by this paragraph is intended to satisfy any and all notice requirements imposed by law on Landlord, including without limitation the notice required under California Code of Civil Procedure Section 1161 or any similar or successor statu[t]e, and is not in addition[] to any such requirement."

Section 14.02, entitled "Remedies," provides, in part: "Remedies Upon Default. Upon the occurrence of an event of default by Tenant as set forth in Section 14.01, Landlord shall have the right, without further notice to Tenant and in addition to any or all other rights or remedies available to Landlord hereunder, at law or equity, to exercise any or all rights or remedies as set forth in this Section (each of which shall be cumulative and non-exclusive of any other right or remedy). No delay or omission of Landlord to exercise any right or remedy shall be construed as a waiver of any such right or remedy of any default. Landlord's remedies shall include the right to: [¶] ' . . . terminate this Lease.'"

Section 17.15, entitled "Waivers," provides: "No waiver by Landlord or Tenant of any provision of this Lease shall be effective unless in writing or shall be deemed to be a waiver of any other provision hereof or any subsequent breach of the same or any other provision. Landlord's consent to or approval of any act by Tenant requiring Landlord's consent or approval shall not be deemed to render unnecessary the obtaining of Landlord's consent to or approval of any subsequent act by Tenant, whether or not similar to the act so consented to or approved. No term, covenant, or condition of this Lease shall be deemed to have been waived by Landlord or Tenant, unless such waiver is in writing."

3

"Landlord now desires to provide Tenant with its requested temporary deferral of the rental amounts payable by Tenant under the Lease and further amend the Lease; and

"In consideration of the mutual benefits and covenants contained in this Agreement, the receipt and sufficiency of which is acknowledged, as of the date of this Agreement, Landlord and Tenant hereby agree to amend the Lease as follows:

"1. Commencing on the date hereof and ending on May 31, 2010 (the 'Rental Deferral Period'), Tenant shall pay no Rent (*i.e.*, no Minimum Rent, Percentage Rent or Additional Rent). The amount of Rent which Tenant would otherwise have owed and paid to Landlord during the Rental Deferral Period pursuant to the Lease shall hereafter be referred to as the 'Deferred Rent.' Tenant shall resume payment of all Rent per the Lease upon expiration of the Rental Deferral Period.

"2. If not paid sooner, Tenant shall repay the Deferred Rent to Landlord without interest by and through equal monthly installments of $5,000 each payable together with scheduled Rent payments due under the Lease during the period January through December of 2012."[3]

The 2009 Amendment thus required Steakhouse to make its first installment payment on January 12, 2012 of $5,000 per month to retire the Deferred Rent.

---

[3] The 2009 Amendment further provides: "3. Section 7.02 [recapture for failure to operate the business] of the Lease and all references thereto and to Tenant having any right to close [its business] shall be of no force and effect during the Rental Deferral Period; accordingly during the Rental Deferral Period Tenant shall have no right to cease operations and must continually operate in the Premises without interruption pursuant to Lease Section 7.01(a) [use of premises for the business].

"4. This Agreement is personal to the Tenant and is non-assignable. Therefore, the Rental Deferral Period will automatically terminate and the Deferred Rent will automatically become due and payable upon any assignment, sublease or other transfer of Tenant's interest in the Lease or of the Leased Premises except if the assignee, sublease or transferee is Outback Steakhouse of Florida, LLC. (Franchisor.)

"5. Tenant and Landlord each will keep in complete confidence and not divulge the existence, contents or provisions of this Agreement to anyone other than [Franchisor]."

4

The Deferred Rent accrued at increments of $5,000 per month, every month, from December 1, 2009, through May 31, 2010. The record is not clear as to when Steakhouse resumed paying monthly rent, but according to the declaration of Steakhouse's president, Thomas J. Shannon, Jr., provided in support of the motion to quash below, Steakhouse remained unable to pay each month's scheduled rent in full until "early 2012" and never made any payments toward Deferred Rent. Shannon stated in his declaration that Steakhouse and Glendale Martketplace discussed terms of a formal extension of rent abatement, but the parties did not execute such an agreement. Nevertheless, Glendale Marketplace never made a demand for any of the installments due under the 2009 Amendment.

This payment pattern—payment of the monthly rent of $10,000 with no retirement of Deferred Rent—commenced in "early 2012" and remained the same until July 2013, when Glendale Marketplace sold the shopping center to current owner, CETTG Glendale LLC (CETTG). Steakhouse had been paying the monthly rent and continued to pay the monthly rent after CETTG completed the purchase of the shopping center in July 2013.[4]

Although Steakhouse was current on Monthly Rent at the time that CETTG assumed ownership of the shopping center in July 2013, Shannon acknowledged that Steakhouse had not paid any of the $5,000 monthly installments for Deferred Rent due under the 2009 Amendment. On May 2, 2013, Shannon executed an Estoppel Certificate, which was provided to CETTG in anticipation of CETTG's purchase of the shopping center. In the Estoppel Certificate, Shannon acknowledged that Steakhouse still owed Deferred Rent of $137,000.[5] Paragraph 8 of the Estoppel Certificate provides: "To the best of Tenant's knowledge, both Tenant and Landlord have performed all of their

---

[4] CETTG admits in the Return to the Petition that Steakhouse has paid "the full monthly rental amounts due under the lease and during [CETTG's] period of ownership of the property (i.e., from and after July 19, 2013), [Steakhouse] has paid full base monthly rent."

[5] The May 2, 2013 Estoppel Certificate replaced an earlier certificate.

respective obligations under the Lease except that Landlord has not demanded its approved deferred payment of One Hundred Thirty-Seven Thousand and No/100 Dollars ($137,000.00) in rents allowed for the survivability of the restaurant and Tenant acknowledges such One Hundred Thirty-Seven Thousand and No/100 Dollars ($137,000.00) rent payment . . . ."[6]

Steakhouse paid the Monthly Rent due on August 1, 2013. Later that month, CETTG began the process that ended with this writ petition. CETTG sought the payment of the entirety of Deferred Rent—$137,000.

Via letter dated August 20, 2013, transmitted by overnight courier, CETTG advised Steakhouse that it was in breach of the original lease and requested cure of the default. CETTG demanded the payment of $137,000, which CETTG characterized as "Minimum Rent" due for the period of December 1, 2009 through May 31, 2010. CETTG stated that "full repayment of such deferred amounts was to have occurred by December 1, 2012. Accordingly, both the deferral and repayment periods have lapsed . . . ."

Subsequently, in a September 16, 2013 letter delivered by overnight courier, CETTG referred to the earlier notice of default as to rent and, stating that Steakhouse had failed to cure the default, CETTG informed Steakhouse that it was in breach of the lease.

On October 23, 2013, CETTG filed the unlawful detainer action, seeking possession of the premises; unpaid rent of $137,000; damages at the rate of $353.42 per

_____

[6] The May 2, 2013 Estoppel Certificate concludes: "This Certificate is being given by Tenant to provide Purchaser and Lender . . . with the benefit of the Tenant's actual current knowledge, information and belief as set forth herein, relative to certain factual matters in connection with the Lease and the Leased Premises. No special investigation beyond ordinary inquiry were undertaken in connection with the issuance of this Certificate. There may exist matters of which Tenant currently has no knowledge or notice and nothing in this Certificate is intended to waive any such matters. Tenant has not knowingly withheld the disclosure of any material facts of which it has knowledge or notice as of the date hereof. Nothing in this Certificate amends or alters the Lease. In the event that this Certificate conflicts with the express terms of the Lease the Lease governs and controls."

day, commencing October 18, 2013, for each day that Tenant continues in possession; and costs and attorney fees.

Steakhouse moved to quash on the legal ground that the complaint did not state a cause of action for unlawful detainer. Steakhouse contended that an unlawful detainer action does not lie for nonpayment of rents which became due more than one year prior to service of a notice to pay rent or quit.

Respondent court denied the motion to quash, stating in part that "[t]he issue is when the unpaid rent was due." Quoting from the 2009 Amendment executed by Steakhouse and Glendale Marketplace, the court stated that "at least some of the deferred rent was not due until December 2012." Citing *Levitz Furniture Co. v. Wingtip Communications, Inc.* (2001) 86 Cal.App.4th 1035, 1041 (*Levitz Furniture*), the court quoted that "'we see no reason why a three-day notice that demands payment of rents due within one year of the notice is automatically invalidated because it also sets out (or demands) rent due *more* than a year before the notice.'"

This petition followed.

### DISCUSSION

Steakhouse contends: "A [Code of Civil Procedure] section 1161 notice that demands $137,000 rent when only $20,000 [of that amount] fell due within one year before the notice is invalid, so the court had no jurisdiction."[7] (Boldface omitted.) We agree.

Simply put, the parties to the 2009 Amendment agreed that the Deferred Rent period covered the time period of December 1, 2009 through May 31, 2010. They agreed that Steakhouse was to pay the Deferred Rent in monthly installments of $5,000 each, along with the Monthly Rent, commencing on January 1, 2012. Pursuant to the terms of the 2009 Amendment, as each $5,000 installment accrued, it became due. The only installments that came due within one year of the August 2013 service of the notice to

---

[7] We asked the parties to address several issues. (Gov. Code, § 68081.)

pay rent or quit were the installments due the last four months of 2012—September, October, November and December. Those installments totaled $20,000. That amount—$20,000—is the amount that could be properly pleaded in the notice. Because the notice sought $137,000—for all twelve months of Deferred Rent—it is contrary to the express terms of the governing statute, Code of Civil Procedure section 1161, and cannot support a complaint sounding in unlawful detainer.[8]

Section 1161 governs the service of a notice to pay rent or quit. It provides: "A tenant of real property . . . is guilty of unlawful detainer: [¶] . . . [¶] 2. When he or she continues in possession . . . after default in the payment of rent . . . . [¶] The notice may be served at any time within one year after the rent becomes due."

A landlord is entitled to possession in an unlawful detainer action only after following the statutory process strictly. (*Palm Property Investments, LLC v. Yadegar* (2011) 194 Cal.App.4th 1419, 1424–1425.) A landlord may not regain possession where the notice to pay rent or quit sets forth more rent than is due or rent that is due more than one year prior to the service of the notice. (§ 1161; *Levitz Furniture*, *supra*, 86 Cal.App.4th at p. 1038.) In its notice, CETTG set forth the amount due as $137,000, the amount that Steakhouse's president Shannon admitted was owing to Glendale Marketplace in the May 2, 2013 Estoppel Certificate. While that amount may be recoverable in a civil action (*Levitz Furniture*, at p. 1038; see *Cal-American Income Property Fund IV v. Ho* (1984) 161 Cal.App.3d 583, 585; *Tillson v. Peters* (1940) 41 Cal.App.2d 671, 677), any part of that amount due more than one year prior to service of the notice cannot support an unlawful detainer action under section 1161.

We reject the position of CETTG that the Deferred Rent was not due until demanded in its August 20, 2013 letter. CETTG relies on the May 2, 2013 Estoppel Certificate, in which Steakhouse certified that the current month's rent had been paid and that Glendale Marketplace had not demanded payment of the Deferred Rent. CETTG

---

[8] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

8

contends that this language shows that Steakhouse made a judicial admission that the Deferred Rent was not due until a demand was made and, by May 2, 2013, no demand had been made and, thus, the Deferred Rent was not yet due. Therefore, CETTG reasons, the Deferred Rent did not come due until August 2013, when CETTG made a written demand for payment in its August 2013 notice to pay rent or quit.

Of course, the Estoppel Certificate[9] is binding on Steakhouse as the party that executed the document. (*Plaza Freeway Ltd. Partnership v. First Mountain Bank* (2000) 81 Cal.App.4th 616, 626.) The facts set forth therein are conclusively presumed to be true as between the parties and their successors in interest. (Evid. Code, § 622.) The estoppel certificate states: "Tenant and Landlord have performed all of their respective obligations under the Lease except that Landlord has not demanded its approved deferred payment . . . ." The fact set forth that is binding against Steakhouse is that Glendale Marketplace did not demand the past-due rent at the time that the estoppel certificate was executed. Neither the lease nor its amendments provides that rent or Deferred Rent would come due only at the time that the Landlord made an express demand. The contrary is true. The Estoppel Certificate did not excuse the failure to pay the Deferred Rent, but it also did not change the date that the Deferred Rent was due. The Estoppel Certificate did not set forth a waiver of the notice or time periods of section 1161. In fact, the Estoppel Certificate states: "Nothing in this Certificate amends or alters the Lease. In the event that this Certificate conflicts with the express terms of the Lease the Lease governs and controls." Thus, irrespective of the lack of any demand on the part of

---

[9] Estoppel certificates are "critical to landlords because they affect their ability to sell commercial real property and to secure financing. Estoppel certificates inform prospective buyers and lenders of the lessees' understanding of a lease agreement. By providing independent verification of the presence or absence of any side deals, estoppel certificates prevent unwelcome post-transaction surprises that might adversely affect the building's income stream, such as: Has the tenant prepaid any rent? Does the tenant have any known or suspected claims for lease violations? What is the tenant's understanding of provisions in the lease? . . . Has the landlord made all the requested improvements?" (*Robert T. Miner, M.D., Inc. v. Tustin Ave. Investors* (2004) 116 Cal.App.4th 264, 273.)

Glendale Marketplace, the agreement between the parties remains as expressly set forth in the 2009 Amendment, the sum of $5,000—installment payments for the Deferred Rent—were due and payable each month, month by month, from January 1, 2012 to December 1, 2012.

While the Estoppel Certificate sets forth the sum of $137,000, that sum is not the amount of Deferred Rent due within one year of the service of CETTG's notice to pay rent or quit. The notice to pay rent or quit was served in August 2013; under section 1161, CETTG's notice to pay rent or quit could claim only the Deferred Rent due one year before August 2013. The sole Deferred Rent installments due within one year of the date of the service of the notice were the sums of $5,000 due, respectively, in September, October, November, and December 2012, for a total amount due of $20,000. CETTG was not entitled to seek the entire amount.

A situation similar to the case at bar arose in *Bevill v. Zoura* (1994) 27 Cal.App.4th 694 (*Bevill*), in which the tenant who had leased commercial premises had not paid rent for over one year. The notice to pay rent or quit, served on November 25, 1992, sought rent due for April 1991 through November 1992. The notice showed the rent due as $40,033.28, and "specified that this total included $17,932.70 in rent owed between April 1991 and December 1991. Thus, [landlord] Bevill requested rent owed more than one year before service of the notice." (*Id.* at p. 696.) The *Bevill* court held that the landlord's notice to pay rent or quit did not support an unlawful detainer action as the notice set forth rent owed more than one year before service of the notice. (*Id.* at p. 697) Landlord Bevill "admitted at trial that he would not have accepted 'anything less' than the [full amount of] $40,033.28 specified in the notice. [Tenant] Zoura was therefore not given the proper opportunity to cure and prevent an unlawful detainer action. Accordingly, Bevill's notice was insufficient to support the unlawful detainer action." (*Id.* at pp. 697–698.)

Another situation similar to the one presented here arose in *Levitz Furniture*, *supra*, 86 Cal.App.4th 1035, where the commercial tenant had not paid rent for years. On

10

July 30, 1999, Levitz served a notice to pay rent or quit, stating that "rent was due in the 'reasonably estimated sum of $99,025.40.' That sum was derived from a single payment of $6,646 due in December 1997 and 12 payments of $7,310, due each month from August 1998 through July 1999." (*Id*. at p. 1037.) The *Levitz Furniture* court stated that under section 1161, a notice to pay rent or quit is invalid where it seeks rent in excess of the amount due and where the notice is served more than one year "after the rent 'becomes due.' [Citation.] If the landlord waits over a year to sue for unpaid rent, he or she is limited to collecting such rent in a standard breach of contract action, 'which results only in a money judgment without restitution of the demised property.' [Citation.]" (*Id.* at p. 1038.)

The *Levitz Furniture*, *supra*, 86 Cal.App.4th 1035 court explained that the one-year limit "has to do with fairness. It prevents a landlord's sitting on his or her rights, when rent is unpaid at some point during the life of a lease, then using long-overdue rent (but no recently overdue rent) to effect an eviction." (*Id*. at p. 1040.)

In considering "the potential impact of" on section 1161 of section 1161.1,[10] which concerns estimated rent due in a commercial context, the *Levitz Furniture* court

---

[10] In pertinent part, section 1161.1 provides: "With respect to application of Section 1161 in cases of possession of commercial real property after default in the payment of rent: [¶] (a) If the amount stated in the notice provided to the tenant pursuant to subdivision (2) of Section 1161 is clearly identified by the notice as an estimate and the amount claimed is not in fact correct, but it is determined upon the trial or other judicial determination that rent was owing, and the amount claimed in the notice was reasonably estimated, the tenant shall be subject to judgment for possession and the actual amount of rent and other sums found to be due. However, if (1) upon receipt of such a notice claiming an amount identified by the notice as an estimate, the tenant tenders to the landlord within the time for payment required by the notice, the amount which the tenant has reasonably estimated to be due and (2) if at trial it is determined that the amount of rent then due was the amount tendered by the tenant or a lesser amount, the tenant shall be deemed the prevailing party for all purposes. If the court determines that the amount so tendered by the tenant was less than the amount due, but was reasonably estimated, the tenant shall retain the right to possession if the tenant pays to the landlord within five days of the effective date of the judgment (1) the amount previously tendered if it had not been previously accepted, (2) the difference between the amount tendered

analyzed *Bevill*, explaining that "*Bevill* does not establish a rule that mere inclusion of rent due more than a year before a three-day notice automatically invalidates the notice. That point was *conceded* by [landlord] Bevill. Further, *Bevill* did not resolve the impact of section 1161.1 on cases such as the one at bench, where a landlord clearly states that the rent claimed in the notice *is* estimated." (*Levitz Furniture*, *supra*, 86 Cal.App.4th at p. 1040, fn. omitted.) The *Levitz Furniture* court expressly limited the use of estimated rent "where monthly rent is not always easily fixed or readily ascertained by simply reading the terms of a lease." (*Id.* at p. 1040) The court explained: "Often, rents are affected by a tenant's revenues, assessments made by taxing authorities that are passed on to a tenant, and the like. If a landlord is required to fix the exact sum due at his peril, unlawful detainer becomes an elusive—if not unavailable—remedy. By permitting a landlord to set out a reasonable estimate of the sum due, unlawful detainer becomes a viable remedy for commercial landlords." (*Ibid.*) To the extent that the holding of *Levitz Furniture* rests on its application of section 1161.1, *Levitz Furniture* does not apply here, as (1) CETTG expressly stated in the notice that the notice was pursuant to section 1161; and (2) CETTG sought the exact amount of $137,000, and did not state in the notice that the amount sought was estimated. (*Levitz Furniture*, at pp. 1040–1041.)

 *Levitz Furniture*, *supra*, 86 Cal.App.4th 1035, however, is instructive in that we agree with its statement that an amount set forth in a notice that includes rent due for more than one year does not automatically invalidate the notice. "Landlords gain a tool that, as analyzed above, is useful and appropriate in a commercial setting, where rents are not always easily fixed. Tenants gain a tool to avoid eviction, when a landlord fails to provide a 'reasonable' estimate of the rent due in a three-day notice. [¶] We also observe that invalidating the three-day notice in the case at bench would exalt form over substance. Here, it appears that the notice given by [landlord] Levitz 'reasonably estimated' the sum due from [tenant] Wingtip—even if the $6,646 due in December 1997

---

and the amount determined by the court to be due, and (3) any other sums as ordered by the court."

12

was improperly included. Put differently, exclusion or invalidation of that sum would still make the $99,025.40 estimate 'reasonable,' as it represents a sum that is less than 20 percent more than the sum due within one year of the notice. As Wingtip candidly admitted at oral argument, the only reason it can argue that the notice given by Levitz was invalid was because Levitz included one 'extra' month (December 1997). Seen in that context, invalidating the notice would penalize Levitz for being forthcoming about the source or the method of calculation of its 'estimate.' Such a result seems unmerited from the language of the statutes and the policies underlying them." (*Id.* at p. 1041.)

In the case at bar, the rent set forth in the notice to pay rent or quit was not estimated and section 1161.1 does not apply. Critically, unlike the notice in *Levitz Furniture*, the notice here did not include Deferred Rent for one "extra" month, but included Deferred Rent for eight "extra" months. Unlike the 80 percent sought in *Levitz Furniture*, about 15 percent of the demanded sum—$20,000 of $137,000—came due less than one year prior to service of the notice to pay rent or quit. Thus, this scenario does not involve "estimated rent." Instead, it arises from the failure to pay an agreed-upon installment of the Deferred Rent, which came due each month, every month, from January 1, 2012 through December 1, 2012. In its complaint in unlawful detainer, CETTG seeks $137,000, 85 percent of which was due more than one year before the service of the notice to pay rent or quit. Section 1161 requires the notice to be served "at any time within one year after the rent becomes due." Neither the notice to pay rent nor the complaint in the unlawful detainer action complies with section 1161. Accordingly, the complaint fails to state a cause of action for unlawful detainer and the motion to quash service of summons should have been granted.

## DISPOSITION

THEREFORE, let a peremptory writ issue, commanding respondent superior court to vacate its order of January 7, 2014, denying petitioner's motion to quash service of summons, and to issue a new and different order granting same, in Los Angeles Superior Court case No. BC525561, entitled CETTG LLC v. Glendale Steakhouse, L.P.

The temporary stay order, issued on February 21, 2014 is vacated. Petitioner is to recover its costs of this writ proceeding.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


ROTHSCHILD, P. J.


CHANEY, J.

14